**Barbara J. HILL, Plaintiff-Respondent,**

v.

**SEABOARD FIRE & MARINE INSURANCE COMPANY, a Corporation, Defendant-Appellant.**

No. 23849.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1963.

Robert S. McKenzie (McKenzie, Williams, Merrick, Beamer & Stubbs), Kansas City, John M. Belisle (Belisle & McNabb), Butler, for appellant.

E. J. Murphy, Butler, for respondent.

HUNTER, Judge.

This is a suit on the uninsured motorists clause of an automobile insurance policy issued by defendant-appellant, Seaboard Fire and Marine Insurance Company to plaintiff-respondent, Barbara J. Hill and her husband, Harry A. Hill. Plaintiff obtained a verdict and judgment for $8,000 in the circuit court of Henry County and defendant has appealed.

The background of the action is that on December 31, 1961, plaintiff was driving a 1955 Chevrolet, owned by her and her husband, south on U. S. Alternate Highway 71 about two miles south of Carthage, Missouri, when her car was struck from the rear by a Falcon automobile driven by a soldier named Abe Corley, causing injuries to her.

Plaintiff's brother-in-law came to the scene and took her to the hospital in Carthage. Defendant was given notice of the accident. While plaintiff was in the hospital she gave a signed statement describing the occurrence to defendant's adjuster from Joplin, and she and her husband made a settlement of $500.00 under the insurance policy with defendant insurance company for the Chevrolet car damage. However,

defendant insurance company denied liability for plaintiff's personal injuries under its uninsured motorists clause; hence this action.

The uninsured motorists clause provides that defendant company will pay all sums which the insured "shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile * *." The policy defines an "uninsured automobile" to mean "an automobile or trailer with respect to the ownership, maintenance or use of which there is no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile * *."

On this appeal defendant makes three contentions; namely, that it should have received a directed verdict because (1) there was not sufficient competent evidence to support a finding that the other motorist was uninsured; (2) because plaintiff did not comply with the terms of her policy providing that determination of whether she is legally entitled to recover damages and the amount shall be by agreement, and if they fail to agree, by arbitration, in that she instituted suit before there was a breakdown of settlement negotiations; and (3) that the trial court erred in permitting plaintiff to offer evidence to establish negligence of a third party and damages therefor and to submit those issues to a jury in an action "ex contractu".

Relative to defendant's first contention, no separate point has been made by defendant complaining of any prejudicial error on the part of the trial court in admitting into evidence any particular testimony. Rather, defendant has contended itself with the charge that there was not sufficient competent evidence to support a finding that Corley was uninsured. The evidence on this question is confined to the testimony of three witnesses—plaintiff, her husband and defendant's claim adjuster, Prudden; together with a letter he wrote.

Plaintiff, who was the first witness, testified that at the scene of the accident Cor-ley told her he had insurance and that he gave her husband a card with the name "Farmer's Mutual" on it. She stated on February 7, 1962, Mr. Prudden came to her. Defendant's counsel asked, "Q. Well, what was the purpose of that call, what went on, what conversation took place? A. Well, he wanted to—he wanted to make a settlement, and we didn't agree on what he wanted to give us, and he also told us that Corley definitely didn't have any insurance." * * * "Q. Did he tell you at the time that he had tried to find insurance on the Corley vehicle? A. Yes, he did. * * * He said that some one had talked to Corley at Arkansas and that he did not have insurance." Defendant's counsel unsuccessfully moved that the answer to the last question be stricken. Plaintiff was asked, "Q. Did Mr. Prudden still acknowledge that the Seaboard Fire & Marine Insurance Company admitted that there was no liability insurance on the Corley vehicle at the time of this accident? A. Yes, he did."

Plaintiff's husband, Mr. Hill, testified that at the request of Mr. Westbrook he called Farmers Mutual Insurance Company and they told him Corley did not have any policy. The trial court overruled defendant's motion to strike this statement as being made by one not authorized to bind defendant corporation and as hearsay. Mr. Hill testified without objection that Prudden told him defendant considered Corley to be an uninsured motorist and that he, Prudden, was ready to settle the claim if they were and that Prudden offered seven or eight hundred dollars in settlement.

On cross-examination defendant's counsel asked Mr. Hill "if there was any conversation about whether any claim was being made under that coverage of your policy, with Mr. Westbrook (defendant's Joplin adjuster)? A. Well, after he found out that Mr. Corley didn't have, yes, there was."

Mr. Prudden testified he had been the claims adjuster for defendant for 11½ years. He stated it was his job as claims

adjuster to investigate and adjust insurance claims and losses; that he was authorized to and did handle settlement of claims and had authority without consultation with anyone to settle claims and write checks therefor. In answer to defendant's counsel's question he stated he contacted plaintiff and her husband, went over the aspects of the policy including the uninsured motorists portion; that he "found out that there had been other insurance—I think Mr. Hill stated that." * * * Well, I told them that we did not know whether we had, or whether our company would be able to take over until we had established the uninsured motorists coverage * *." He informed them he "would be agreeable to trying to work something out around $700.00 if there wasn't any insurance on the other vehicle." He conceded he gave defendant's attorney letters received from Farmers Mutual saying they didn't have coverage on the Corley vehicle at the time of the accident. He stated without objection that the agent of Farmers Mutual "told this Corley boy that his policy was cancelled (prior to the accident)." He conceded that as of the date of the trial his company's investigation did not turn up any insurance of Farmers Mutual or of anyone else; that he had found insurance in Farmers Mutual that would have covered the boy if it had not been cancelled prior to the accident.

Nine days before suit was filed Prudden wrote plaintiff's counsel, "We wish to advise that we have been unsuccessful in locating any liability insurance on the Corley vehicle at the time of this accident. Therefore, we shall be pleased to handle this matter under the Uninsured Motorists Protection of our policy."

■ Plaintiff has the burden of proof and it was incumbent on her to prove (1) that the other motorist in the accident was uninsured, (2) that the other motorist is legally liable to the insured, and (3) the amount of such liability. We are convinced that the above outlined evidence, omitting from consideration that to which defendant's counsel made timely objection, is sufficient for the jury to have found that the other motorist was uninsured, and, hence, that the trial court did not err in refusing to direct a verdict for defendant at the close of the case because of lack of evidence that Corley was an uninsured motorist. While some of this evidence is hearsay, it was not objected to, and in fact was adduced by defendant's counsel. It is the established rule that hearsay evidence, if not objected to, is admissible and may be considered, along with other evidence, in determining whether a submissible case has been made.

■ It is uncontroverted that Prudden was the agent of the defendant and was acting within the scope of his authority at all of the times he contacted the Hills, investigated the claim and discussed it with them. His declarations in the nature of admissions against the interest of the defendant made within the course and scope of his employment while his investigation of plaintiff's claim was pending and made in direct connection therewith and as a part of the transaction itself are evidence in the case and may be considered as such. Roush v. Alkire Truck Line, Mo.Sup., 299 S.W.2d 518; Baker v. Aetna Casualty & Surety Co., Mo.App., 193 S.W.2d 363; Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S.W.2d 947, 952; 31 C.J.S. Evidence § 343, p. 1113 ff. Defendant cites Levy v. American Automobile Ins. Co., 31 Ill.App. 2d 157, 175 N.E.2d 607, but in that case the insurance company remained silent and never admitted or conceded the noninsurance of the automobile in question. We find no merit in defendant's first contention of error.

■ Defendant's second contention concerns that portion of the policy providing, "for the purpose of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration, * *."

"ARBITRATION.

"If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under the Uninsured Motorists Coverage, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this paragraph." [1]

On April 16, Prudden wrote plaintiff's counsel a letter mentioning, among other things, that if we "are unable to negotiate a settlement, you realize this matter will be handled through 'the American Arbitration Association as described in our policy * * *.' "

Even if we treat the above letter as a written demand for arbitration of the matters upon which they do not agree, (such matters being then unknown) rather than as a written reminder of the policy provisions, which is what we think it was, defendant's contention concerning arbitration is without merit, and this because of Section 435.010, RSMo.1959, V.A.M.S. which provides:

"Any contract or agreement hereafter entered into containing any clause or provision providing for an adjustment by arbitration shall not preclude any party or beneficiary under such contract or agreement from instituting suit or other legal action on such contract at any time, and the compliance with such clause or provision shall not be a condition precedent to the right to bring or recover in such action."

This statute which has remained in substantially its present form since 1909 has been construed to make unenforceable that portion of contracts or agreements requiring arbitration as a condition precedent to the bringing of suit where, as here, one party, the insurer, denies liability or coverage. See, McManus v. Farmers Mutual Hail Insurance Company of Missouri, 239 Mo.App. 882, 203 S.W.2d 107; State ex rel. State Farm Mutual Automobile Insurance Co. v. Craig, Mo.App., 364 S.W.2d 343, 345–346; Arbitration in Missouri, 13 Mo.L.Rev. 170.

■ To escape the effect of this statute defendant now argues that it did not deny liability but only questioned the amount, which is subject to arbitration.[2] However, this was not defendant's trial theory and defendant did vigorously deny liability in its pleadings and during the trial below. It cannot now successfully change its trial theory and pattern.

■ Defendant's contention that the plaintiff failed to attempt to agree as it contends the insurance policy requires is also without merit. Aside from serious questions as to the meaning and enforceability of such a clause which we do not pass on, there is considerable evidence of such an attempt, by plaintiff and by her counsel. Although plaintiff's counsel broke

1. Uninsured motorist coverage is new in the insurance field. For a collection of cases interpreting such coverage see, Risjord-Austin, Automobile Liability Insurance Cases, Chapter 62; 79 A.L.R.2d 1245; American Bar Association, Section of Insurance, Negligence and Compensation Law (1960) page 281 ff; The Wisconsin Bar Bulletin, April 1963, page

15 ff; 5A Am.Jur., Automobile Insurance, par. 82.5.

2. As to agreements that merely provide a reasonable method of estimating or appraising the amount of damage, see Security Printing Co. v. Connecticut Fire Ins. Co., 209 Mo.App. 422, 240 S.W. 263; Dworkin v. Caledonian Insurance Co., 285 Mo. 342, 226 S.W.2d 846.

off negotiations and filed suit, the evidence indicated the parties were not in agreement and were so far apart in their positions as to make it seem futile to discuss the matter further. See, State ex rel. State Farm Mutual Automobile Insurance Co. v. Craig, supra, 364 S.W.2d loc. cit. 345(5).

We turn to defendant's final contention —that it was error to permit defendant in a contract action to offer evidence to establish the negligence of a third party and damages therefor and to submit those issues to a jury. In essence defendant's contention is that plaintiff must first bring suit against the uninsured motorist and get a judgment against him before plaintiff is entitled to recover against defendant.

■ The cardinal rule in interpreting insurance contracts is that it is the intent expressed therein that is to control, and if the contract is reasonably susceptible of two or more interpretations that one which will sustain the insured's claim must be adopted, since the language used in the policy is that of the insurer. A court is not permitted to rewrite or alter a written contract under the guise of judicial construction.

■ Does this policy provide that a judgment must be obtained against the uninsured owner or operator in order for the plaintiff to recover from defendant? Clearly it does not. Defendant-insurer has stated in the policy that it "will pay all sums which the insured or his legal representative *shall be legally entitled to recover* as damages from the owner or operator of an uninsured automobile * *."" (Emphasis ours.) Additionally, in another policy clause an "uninsured automobile" is defined to include "a hit and run automobile" i. e. one against whom a judgment is not obtainable because the owner or operator is unknown. For decades insurance companies have been writing unsatisfied judgment policies and are knowledgeable in the art of specifically requiring an unsatisfied judgment as a condition precedent to their liability and to a suit directly against the insurer, if that is the insurer's intent. Here, there is no language in the policy that requires an unsatisfied judgment to establish the legal liability, or the amount thereof, of the owner or operator of the uninsured automobile.

The defendant insurance company is not the insurer of the owner or operator of the uninsured automobile, and by its policy contract with plaintiff has agreed to pay plaintiff all sums which plaintiff is entitled to recover from the owner of the uninsured automobile. Plaintiff's suit is based on its policy contract with defendant and plaintiff is entitled to directly sue defendant insurance company without being required to show an unsatisfied judgment as a condition precedent to recovery.

■ In a broad sense such a suit is comparable to a dispute between an insurer and the insured under a medical payment coverage clause in a collision insurance policy. The proper action is a suit by the insured directly against his insurance company. The fact that the defendant happens to be an insurance company and that insurance companies are not popular with juries nor treated kindly by their verdicts does not make it immune from being sued under its contract. Nor is such suit a tort action merely because the insured under the terms of the contract sued on must show he is entitled to recover damages from the owner or operator of an uninsured automobile.

In passing we note that in State ex rel. State Farm Mutual Automobile Ins. Co. v. Craig, 364 S.W.2d 343, 347, the Springfield Court of Appeals expressed a similar view, "To say in this case that the action (intervention) is premature because the insured has not yet established the legal liability of the uninsured motorist would in effect convert the 'legally liable' policy to an unsatisfied judgment policy and would promote the multiplicity of suits."

For the reasons stated, the judgment is affirmed.

All concur.