Owen REESE and Frances Reese,
Plaintiffs-Appellants,

v.

**PREFERRED RISK MUTUAL INSUR-
ANCE COMPANY, Defend-
ant-Respondent.**

No. 33646.

St. Louis Court of Appeals,
Missouri.

June 12, 1970.

Motion for Rehearing or Transfer to Su-
preme Court Denied July 2, 1970.

Application to Transfer Denied
Sept. 14, 1970.

James F. Koester, Norman A. Selner, St. Louis, for plaintiffs-appellants.

Moser, Marsalek, Carpenter, Cleary & Jaeckel, Paul S. Brown, St. Louis, for defendant-respondent.

DOWD, Judge.

This is a suit on the uninsured motorist clause of an automobile insurance policy issued by defendant-respondent, Preferred Risk Mutual Insurance Company (hereinafter Preferred) to plaintiffs-appellants, Owen Reese and his wife, Frances Reese. The plaintiffs' son, Michael, age 14, a pedestrian, died immediately when struck by an auto operated by Dennis O'Toole on April 2, 1965 on Interstate 270. On September 23, 1965 suit was instituted against O'Toole. In early 1969, the plaintiffs learned that O'Toole was uninsured and also learned that their policy provided for uninsured motorist coverage which covered their son as a pedestrian.[1] They then immediately joined the defendant Preferred on February 14, 1969. The trial was three months later. The action against Preferred is in Count II of the Amended Petition. During voir dire plaintiffs dismissed with prejudice as to defendant O'Toole. When plaintiffs' attorney dismissed as to O'Toole, he explained that the plaintiffs were going to proceed against the insurance company on the basis of the uninsured motorist clause of their policy. Plaintiffs' attorney then asked the veniremen: "Would any of you have any feeling or be influenced by the fact that we are not involving, financially, the driver of the car?" Defendant Preferred's attorney objected and made a motion for a mistrial on the ground that defendant Preferred was prejudiced by plaintiffs' dismissal of O'Toole and by the statement that O'Toole would not then be involved financially. The objection and motion for mistrial were overruled. Plaintiffs submitted their case

---

1. Although uninsured motorist coverage was available prior to 1965, mandatory coverage was enacted for Missouri by the Legislature effective October 13, 1967. Section 379.203 V.A.M.S.

against Preferred based on the humanitarian doctrine on O'Toole's failure to slacken speed and swerve and asked for judgment against Preferred in the amount of $5,000 which was the extent of Preferred's coverage.

The jury returned a verdict in plaintiffs' favor against defendant Preferred for $3,500.

However, the trial court sustained defendant's motion for judgment in accordance with its motion for a directed verdict on two grounds: (1) By dismissing with prejudice against O'Toole (uninsured motorist) plaintiffs are not legally entitled to recover against O'Toole and therefore cannot recover against the defendant Preferred. (2) Plaintiffs breached the policy provision by preventing defendant from pursuing any right of subrogation against O'Toole by dismissing with prejudice and violated the Trust Agreement of the policy. The court entered judgment in favor of Preferred. Plaintiffs appealed.

Did the trial court err?

The following policy provisions are pertinent to this opinion. The uninsured motorist coverage involved here is contained in Part IV of the policy under a heading: PROTECTION AGAINST UNINSURED MOTORISTS.

"Coverage U—Bodily Injury Benefit:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury', sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *."

Also under the uninsured motorist coverage an "uninsured automobile" is defined to include "a hit and run automobile."

"Notice of Legal Action

"If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury against any person or organization legally responsible for the use of an automobile involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative.

"Proof of Claim; Medical Reports

"As soon as practicable, the insured or other person making claim shall give to the company written proof of claim, under oath if required, including full particulars of the nature and extent of the injuries, treatment, and other details entering into the determination of the amount payable hereunder. * * *

"Exclusions

"This part does not apply:

"(1) to bodily injury to an insured, or care or loss of services recoverable by an insured, with respect to which such insured, his legal representative or any person entitled to payment under this part shall, without written consent of the company, make any settlement with or prosecute to judgment any action against any person or organization who may be legally liable therefor; * * *."

In interpreting insurance contracts it is the intent expressed therein which is to control, and if the contract is reasonably susceptible of two or more interpretations that one which will sustain the insured's claim must be adopted, since the language used in the policy is that of the insurer. A court is not permitted to rewrite or alter a written contract under the guise of judicial construction. Hill v.

Seaboard Fire & Marine Ins. Co., Mo. App., 374 S.W.2d 606[8].

Did plaintiffs' dismissal with prejudice against the uninsured motorist so that plaintiffs were barred from recovering from the uninsured motorist, preclude the insured from recovering from the insurer? Defendant contends that one is not "legally entitled to recover" against another if he dismissed the basis for such legal entitlement with prejudice.

It is necessary for us to interpret the uninsured motorist coverage which requires the insurer: "To pay all sums which the insured * * * shall be *legally entitled to recover* as damages from the owner or operator of an uninsured automobile because of bodily injury, * * * including death resulting therefrom, * * * sustained by the insured, caused by accident and *arising out of the ownership, maintenance or use of such uninsured automobile: * * *.*" (Emphasis ours).

This very phrase "legally entitled to recover" was discussed in Hill v. Seaboard Fire & Marine Ins. Co., supra, which was also a suit on the uninsured motorist clause. The court held that this type suit is a contract action based upon a policy contract with the insurance company and the insured is entitled to directly sue the insurer without being required to show an unsatisfied judgment as a condition precedent to recovery. In Hill the court pointed out that the uninsured motorist coverage included, like here, "hit and run automobiles" where a judgment is not obtainable because the owner or operator is unknown. The court stated in Hill, supra, l.c. 611: "* * * For decades insurance companies have been writing unsatisfied judgment policies and are knowledgeable in the art of specifically requiring an unsatisfied judgment as a condition precedent to their liability and to a suit directly against the insurer, if that is the insurer's intent. * * *" The court then in Hill stated that there is no language (nor is there in this case) that requires an unsatisfied judgment to establish the legal liability, or

the amount thereof, of the owner or operator of the uninsured automobile.

■ If the insured then is not required to join the uninsured motorist, may the insured dismiss with prejudice as to the uninsured motorist if he is joined in a suit against the insurer. We hold that the insured may dismiss with prejudice without jeopardizing his cause of action against the insurer.

This phrase "legally entitled to recover" was discussed in Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580, 583 where the court stated: "* * * We interpret the words 'legally entitled to recover' to mean simply that the plaintiff must be able to establish fault on the part of the uninsured motorist which gives rise to damages and prove the extent of those damages. * * *"

Also in Sahloff v. Western Casualty & Surety Company, Wis., 171 N.W.2d 914, 917 the court agreed with the Louisiana court's interpretation of this phrase in stating: "* * * We think the phrase [legally entitled to recover] was used only to keep the fault principle as a basis for recovery against the insurer and deals with the question of whether the negligence of the uninsured motorist and the absence of contributory negligence is such as to allow the insured to recover. * * *"

■ Again in DeLuca v. Motor Vehicle Acc. Indem. Corp., 17 N.Y.2d 76, 268 N.Y. S.2d 289, 215 N.E.2d 482 the court stated that the language in question "legally entitled to recover" simply means and denotes fault on the part of the uninsured motorist. We agree with the interpretation placed on this phrase by these courts and hold that this phrase refers to fault on the part of the uninsured motorist. The phrase involves the causal negligence on the part of the uninsured motorist (and the absence of contributory negligence where submitted) and the resulting damages to the insured. Also we believe this phrase is ambiguous and as such must be construed in favor of the insured.

■ Also pertinent to the issue of the dismissal as to O'Toole is Denny v. Mathieu, Mo., 452 S.W.2d 114 a recent en banc decision which was decided after this case was argued on appeal. In Denny, the plaintiff was a passenger in her husband's auto which collided with an unlighted truck. Suit was filed against the owner of the truck, Mathieu, and the driver, Rhodes. Plaintiff's attorney during final argument dismissed as to the driver with prejudice. The court concluded that this dismissal actually adjudicated nothing and stated: (1. c. 119)

"We hold that the dismissal with prejudice by plaintiff as to defendant Rhodes did not operate as such an adjudication on the merits as to prevent her from proceeding with the case against Mathieu. It was not the equivalent of a jury verdict in favor of Rhodes. Pursuant to the view expressed herein that such a dismissal serves as a mechanism to terminate litigation, the dismissal, of course, would bar plaintiff from filing a new suit against Rhodes. * * *"

So also here the dismissal with prejudice as to O'Toole was not an adjudication on the merits and did not affect the liability of the insurer to the insured and did not bar an action against the insurer.

Defendant relies on Noland v. Farmers Insurance Exchange, Mo.App., 413 S.W.2d 530. In that case, the uninsured motorist was the husband of the plaintiff and the court held that the wife could not maintain an action under the uninsured motorist coverage because of the relation of husband and wife and that as the husband of the plaintiff he was not legally responsible or liable to pay her any damages. This type of bar to legal responsibility is predicated strictly because of this relationship and is not applicable to the case here.

Defendant also cites Kisling v. MFA Mutual Ins. Co., Mo.App., 399 S.W.2d 245 which held that the policy provision prohibiting settlement by the insured with persons who may be legally liable for the insured's damages is valid and enforceable. This case is not in point here. In Kisling there was an $1,800 settlement against a defendant (not the uninsured motorist). Here there was no settlement with the uninsured motorist but only a dismissal which amounted to a termination of litigation against the uninsured motorist. Denny v. Mathieu, supra.

■ The second ground on which the trial court took away plaintiffs' judgment was that the "* * * plaintiffs breached the policy conditions by preventing defendant from pursuing any rights of subrogation against * * * O'Toole by dismissing with prejudice thus violating [the] Trust Agreement * * * of the said policy." What rights of the insurer were prejudiced by the plaintiffs' dismissal with prejudice against O'Toole? The Uninsured Motorist Statute (Section 379.203(4), V.A.M.S.) [2] provides:

"In the event of payment to any person under the coverage required by this section, and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, * * *."

Compare the language used in the above cited statute as to the insurer's right to reimbursement with the language used in the Trust Agreement of the policy which provides:

"(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible

2. As is indicated in footnote 1, the effective date of the statute is after the date of the insurance policy and the statute is discussed here only for the purpose of comparison with the policy provision.

for the bodily injury because of which such payment is made; * * *."

It is clear that the Trust Agreement only gives the insurer the right to be reimbursed from the proceeds of any settlement or judgment which the insured obtained from the uninsured motorist. This is the extent of the insurer's rights here. In neither the statute nor the Trust Agreement is the word subrogation used.

■■■ Nor could the insurer have proceeded against the uninsured motorist on the basis of an assignment or on the basis of subrogation. This for the reason that in this state an action for personal injury or wrongful death is not assignable.

In Forsthove v. Hardware Dealers Mutual Fire Ins. Co., Mo.App., 416 S.W.2d 208, an insurer sought to enforce a claim against the insured for breach of subrogation rights for payment of medical and funeral expenses to its insured for the death of his wife. This court held that personal injury and death actions are not assignable and that therefore the medical pay clause in a policy which provided for the assignment and subrogation of a claim against a tort-feasor was invalid. The court in Forsthove stated at l.c. 221:

" * * * The same reasons of public policy which make personal injury and wrongful death claims not assignable operate with the same effect against their transfer by so called subrogation and its kindred principle of restitution. * * * "

Earlier in Traveler's Indemnity Co. v. Chumbley, Mo.App., 394 S.W.2d 418, the insurer paid Chumbley's medical expenses under a policy with him and then notified the tort-feasor, one Losinsky of its alleged subrogation interest. Thereafter, Chumbley filed suit against the tort-feasor but later settled the case and dismissed with the prejudice against the tort-feasor. The insurer then sued Chumbley and the tort-feasor under a subrogation provision of its policy with Chumbley to recover its medical payments. The trial court's dismissal

of plaintiff's petition for failure to state a claim was affirmed. In Traveler's, the insurer claimed its right of subrogation by reason of paragraph 15 of its policy with the insured which provided: (1.c. 420)

"15. Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

The court stated at l.c. 423 that in legal effect the insurer's status was that of an assignee of a portion of the insured's cause of action for personal injury and decided the case on the basis that a cause of action for personal injury is not assignable. The court then held at l.c. 423:

" * * * If (as we have determined) Chumbley's cause of action for personal injury, which embraced and included his right to recover his medical expenses, was not assignable, it necessarily follows that the purported assignment of such right of recovery by paragraph 15 of the policy 'conditions' was of no validity and effect."

Thus, we hold that the plaintiffs did not prejudice defendant's right of subrogation by their dismissal as to O'Toole for the reason that defendant had no right of subrogation and also any attempt to provide for an assignment or subrogation in favor of the defendant in the Trust Agreement would be invalid.

■■■ Defendant next contends that if this court should disagree with the trial court's grant of judgment to this defendant, then defendant is entitled to a new trial on the issue of damages only because the court erred in overruling defendant's motion for a mistrial when plaintiffs' attorney on voir dire dismissed against O'Toole and stated that they were not in-

volving O'Toole financially. Defendant argues that this statement was an appeal for sympathy and that it was prejudiced.

The verdict on this death case was for $3,500 on a $5,000 policy. This is a modest verdict. There is no claim that the verdict is excessive and we need not determine whether the trial court abused its discretion in overruling defendant's motion for a mistrial. Anderson v. Bell, Mo., 303 S.W. 2d 93[13]; Rogers v. Spain, Mo.App., 388 S.W.2d 518[3]. Defendant's contention is rejected.

Defendant last contends that if this court does not affirm the trial court it is entitled to a new trial because plaintiffs' verdict-director is defective because it failed to require a finding that plaintiffs complied with the policy provisions requiring a forwarding of a copy of summons and complaint to defendant in the suit against O'Toole and the policy provisions requiring plaintiffs as soon as practicable to give to defendant written proof of the details of the claim.

Defendant pleads in its Answer that the plaintiffs are barred from recovery on the insurance policy because of the failure of the plaintiffs to comply with the following conditions precedent in the policy: (a) To furnish Preferred as soon as practicable written proof of claim with full particulars of the details of the occurrence; (b) To forward immediately to the company a copy of the summons and complaint or other process served in connection with any legal action instituted.

Defendant further pleads in its Answer that plaintiffs' claim is barred because of the policy provision which states: "No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy * * *." And that plaintiffs failure to comply with the two conditions precedent was to the prejudice of the defendant.

■ This same policy provision which was pleaded in defendant's Answer was discussed in Greer v. Zurich Insurance Company, Mo., 441 S.W.2d 15 and the court stated at 1.c. 31:

" * * * Whether this is termed a condition precedent or subsequent, or a forfeiture is immaterial. It, in effect, provides for an avoidance or forfeiture not of the policy but of a claim under the policy because the insurance contract has proscribed recourse to the legal remedy. The condition should be construed most strongly against the insurance carrier."

The court in Greer then pointed out that one of the factors to be considered by the triers of facts in determining if notice of the accident was given and the suit papers were forwarded within a reasonable time and agreeable to policy conditions is whether the insurer has been prejudiced because of the delay or lack of notice.

■ Except for the phrase "to the prejudice of defendant" in the Answer, there is no claim by defendant that it was prejudiced by the failure of the plaintiffs to furnish it the proof of claim or the copy of the summons and complaint which was served on O'Toole. Nor is there any evidence in the record that defendant was prejudiced in any way. There was no issue in the trial that defendant was prejudiced. Therefore, this instruction was not defective and the jury was not required to make a finding that plaintiffs filed a proof of claim as soon as practicable and furnished defendant with a copy of the summons and complaint. Here Preferred was joined three months before trial and had the opportunity (which it exercised) to litigate both the issues of liability and damages. Preferred was ably represented by its own competent counsel in a well contested trial.

In Meyers v. Smith, Mo., 375 S.W.2d 9 the court considered a claimed breach of a comparable provision of an auto insurance policy i. e., failure of the insured to cooperate. The appellant (insurer) contended that the condition to cooperate was a condition precedent and the breach thereof prejudiced the garnishee, insurer. The court in Meyers cited Western Casualty & Surety Co. v. Coleman, 8th Cir., 186 F.2d 40, 44[4] which stated: "The Missouri cases cited [in the, opinion] have established the rule that failure of an insured to give notice of an accident will not defeat his right under a liability policy unless it contains a provision for a forfeiture or unless the insurer proves that the failure resulted in prejudice * * *." The question of whether the insurer was prejudiced by the insured's conduct was the determining factor in the decision in the Meyers case. The court affirmed the judgment for the plaintiff and stated at l.c. 19: "On the record presented we find no prejudice to appellant on account of any alleged failure to cooperate with the insurer." Also in Schultz v. Queens Ins. Co., Mo.App., 399 S.W.2d 230 the court held that a plaintiffs' instruction which failed to require the jury to find that plaintiffs filed a proof of loss was not defective where defendants had not proved they were prejudiced by plaintiffs' failure. The policy here contains no expressed forfeiture provision nor was there any proof that the insurer was prejudiced in any way by the failure of plaintiffs to file a proof of claim as soon as practicable and furnish defendant a copy of the summons and complaint. Defendant's contention is rejected.

For these reasons the order sustaining the motion of defendant for judgment in accordance with its motion for a directed verdict is reversed and the cause remanded to the trial court with our direction to reinstate plaintiffs' judgment.

WOLFE, P. J., and BRADY, J., concur.