**Siegfried C. MESSNER,
Appellant–Plaintiff,**

v.

**AMERICAN UNION INSURANCE
COMPANY, Respondent–
Defendant.**

**No. 25348.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 19, 2003.

James P. Leonard, McSweeney, Slater & Merz, St. Louis, for appellant.

Danna McKitrick, Daniel G. Tobben, and Kevin B. Behrndt, St. Louis, for respondent.

KENNETH W. SHRUM, Judge.

This is a suit by Siegfried C. Messner ("Plaintiff") against his automobile insurer, American Union Insurance Company ("Defendant"). Plaintiff seeks damages based on the *"underinsured"* coverage of his policy and Defendant's vexatious refusal to pay. Plaintiff appeals from a judgment on the pleadings favorable to Defendant entered pursuant to Rule 55.27(b).[1]

Plaintiff argues the trial court committed reversible error when it ruled (1) Plaintiff's claim was time-barred, and (2) a judgment for Defendant was mandated by

---

1. All rule references are to Supreme Court Rules (2003), unless otherwise indicated.

"circular" language in a release given by Plaintiff to the third-party tortfeasor who caused Plaintiff's injuries. We agree. The judgment is reversed and the case is remanded.

## STANDARD OF REVIEW

When a party moves for a judgment on the pleadings per Rule 55.27(b), a court will treat the allegations of the petition as true for purposes of the motion. *Main v. Skaggs Community Hosp.*, 812 S.W.2d 185, 186[1] (Mo.App.1991). A trial court can properly sustain a motion for judgment on the pleadings only if the facts pleaded by the petitioner, together with the benefit of all reasonable inferences drawn therefrom, show that petitioner could not prevail under any legal theory. *A.R.H. v. W.H.S.*, 876 S.W.2d 687, 688[1] (Mo.App.1994).

## FACTS

On June 22, 1997, Plaintiff sustained injuries when the vehicle he was driving (which was insured by Defendant) collided with a vehicle driven by Anthony Dean ("Tortfeasor"). Tortfeasor's policy had a bodily injury limit of $100,000 for each person. At the time, Defendant's policy afforded Plaintiff *underinsured* coverage in the amount of $100,000 for bodily injury for each person and $300,000 for each occurrence.

In late 1997, Tortfeasor's insurer offered Plaintiff $100,000 (Tortfeasor's policy limits) to settle Plaintiff's claim. Thereon, Plaintiff contacted Defendant regarding possible recovery based on the underinsured provision of the policy with Defendant. Defendant responded that it would not pay anything per the underinsured provision of its contract because "the limits

of the tortfeasor ($100,000) were the same as Plaintiff's limits of liability insurance."[2] After this response, Plaintiff settled his claim with Tortfeasor for $100,000 on December 4, 1997.

On July 22, 2002, Plaintiff brought this suit against Defendant seeking damages for bodily injury sustained in his June 22, 1997, accident with Tortfeasor. In a separate count, Plaintiff sought damages for Defendant's vexatious refusal to pay the underinsured benefit due him under his policy with Defendant.

Defendant's answer admitted, *inter alia*, that its policy provided $100,000 underinsured motorist coverage for Plaintiff, and Plaintiff sustained "significant injuries" in the accident with Tortfeasor. However, Defendant accompanied its answer with a motion for a judgment on the pleadings. This motion had two prongs, namely, that Plaintiff's suit was time-barred and that the release given by Plaintiff to Tortfeasor barred Plaintiff's claim as a matter of law. The trial judge agreed with both propositions and entered judgment for Defendant. This appeal by Plaintiff followed.

### Point I: Statute of Limitations Issue

In part, the trial court entered judgment for Defendant because Plaintiff sued Defendant more than five years after the accident occurred between Plaintiff and Tortfeasor. Relying heavily upon *Baumgartel v. Am. Family Mut. Ins. Co.*, 29 S.W.3d 416 (Mo.App.2000), the court found "that plaintiff, by his own failure to file an action against the tortfeasor within five years, has destroyed the defendant's right to recover from the tortfeasor under defendant's subrogation rights." Further, the court also found that "plaintiff in this case cannot as a matter of law prove or

**2.** This theory was not the basis for the trial court's decision, nor has it been addressed on appeal by the parties; consequently, any

question regarding the viability of this proposition remains unresolved.

establish that he is *legally entitled to recover* from the tortfeasor...." (Emphasis supplied.) The court determined that *Baumgartel* is "controlling authority, and plaintiff's destruction of defendant's right of subrogation recovery bars recovery by the plaintiff."

In his brief on appeal, Plaintiff argues that the trial court erred in entering judgment for Defendant. He insists that the *Baumgartel* court was "simply wrong" in its decision, and the many cases which analyze time-bar statutes in uninsured/underinsured cases are irreconcilable. Plaintiff asserts that we should resolve the dispute here by following the decisions of the Supreme Court of Missouri in cases such as *Oates v. Safeco Ins. Co. of Am.*, 583 S.W.2d 713 (Mo.banc 1979), and *Cobb v. State Sec. Ins. Co.*, 576 S.W.2d 726 (Mo. banc 1979). The validity of this argument requires a careful analysis of cases cited by both parties in their respective briefs.

We begin with *Oates*. There, the plaintiff, Oates, was injured in a car accident with a third-party tortfeasor, Coad. Oates sued Coad, but dismissed his case while Coad's counterclaim was pending. During the same period, Oates sued his automobile insurer, Safeco, seeking recovery on his uninsured motorist provision. In the Oates/Coad litigation, judgment was entered for Coad on his counterclaim. 583 S.W.2d at 715. Thereon, Safeco relied on *res judicata* principles to assert that the judgment favorable to Coad precluded Oates' recovery against Safeco. Safeco also defended on the ground that Oates was not "legally entitled to recover" against Coad after the termination of the

Oates/Coad suit, and therefore, he was precluded from proceeding against Safeco.[3] *Id.* at 715. Safeco argued this result attended due to the compulsory counterclaim rule, i.e., Oates waived his claim once he dismissed his suit and allowed Coad to proceed to judgment on his counterclaim. After the trial court dismissed Oates' suit against Safeco, Oates appealed. *Id.*

On appeal, the Missouri Supreme Court cited with approval cases that had interpreted the phrase "legally entitled to recover" to mean that a plaintiff must be able to show the tortfeasor was at fault. *Id.* at 715–16. The *Oates* court continued:

> "Under these decisions, the insured is 'legally entitled to recover' if his action [against the tortfeasor] is not barred by a *substantive limitation* at the time the action is brought against the uninsured motorist carrier and he can show (1) causal negligence or fault on the part of the uninsured motorist, (2) the absence of contributory negligence where submitted, and (3) resulting damage to himself."

*Id.* at 716[2] (emphasis supplied) (citations omitted).

In essence, *Oates* stands for the proposition that, unless a substantive time limitation is implicated (such as in a wrongful death suit), the ten-year statute of limitations for contracts applies to a suit on the insurance policy and not the five-year statute of limitations for a tort action. Applying that principle, the *Oates* court declared that the "compulsory counterclaim creates a *procedural bar only* [;]" consequently, "allowing the tort statute of limitations to

3. The phrase "legally entitled to recover" is found in Missouri's uninsured motorist statute, § 379.203 (RSMo 2000). Per this statute, a party with uninsured motorist coverage can recover damages from the insurer for his or her injuries caused by an uninsured tortfeasor when the injured party can show he or she is

"legally entitled to recover" from the tortfeasor. There is no comparable statute that addresses *underinsured* motorist coverage. This fact, however, does not affect our decision because both parties implicitly concede that Plaintiff's policy with Defendant, albeit not part of this record, contained such language.

lapse before suit was brought under the uninsured motorist contract did not prevent [Oates] from establishing he was 'legally entitled to recover' in the contract action." *Id.* at 718 (emphasis supplied).

In reaching its decision, the *Oates* court relied upon *Edwards v. State Farm Ins. Co.*, 574 S.W.2d 505 (Mo.App.1978). In that case, Edwards was injured when her automobile was struck from behind by a vehicle driven by Gardner. More than five years after the accident, Edwards sued her insurance company seeking to recover personal injury damages based on an uninsured motorist policy provision. The trial court ruled that Edwards' suit was time-barred, i.e., barred by the tort five-year statute of limitations (§ 516.120). *Id.* at 506. On appeal, the western district held that the applicable time limitation was ten years as provided in section 516.110. *Id.* at 508[3]. The court so held because Edwards' cause of action was based on the insurance contract. *Id.* at 506–08[1]. The *Edwards* court recognized that the effect of its ruling, and Edwards' delay in filing the suit, was to destroy the insurer's subrogation rights, but the court declared this was irrelevant to the insured's right to recover based on the contract. *Id.* at 508.

The court ruled that "legally entitled to recover" meant establishment of the tortfeasor's fault which is not affected by the time bar of the tort five-year statute of limitations. *Id.*

Next, we consider the case upon which the trial court relied most heavily when it ruled adversely to Plaintiff, i.e., *Baumgartel*. Preliminarily, we reject Plaintiff's argument that *Baumgartel* was wrongly decided. We are persuaded, however, that both parties here are confused by cases such as *Baumgartel*.[4] We are equally persuaded that *Baumgartel* does not support the trial court's decision because it is factually inapposite. This follows because in *Baumgartel* the underlying cause of action was for wrongful death, not personal injury.

Specifically, Brian Baumgartel was killed in a vehicular accident and his widow first settled with the tortfeasor. Later, after the three-year wrongful death limitation period had run, the widow sued her insurer seeking to recover on the uninsured and underinsured provisions of her policy. The appellate court held that the widow's failure to file a wrongful death suit against the tortfeasor barred recovery

---

**4.** The confusing nature of the cases that analyze time limitations in suits on uninsured/underinsured coverage have been characterized as a "conundrum" that could produce a "lively debate" by a "moot court cadre." *Taylor v. Farmers Ins. Co., Inc.*, 906 S.W.2d 882, 888 (Mo.App.1995). It appears that some of this confusion results from *Cobb*. The court noted therein that the tortfeasor was sued for wrongful death in the same suit against the insurer, but he was dismissed from the litigation. *Id.* at 733. The court found this dismissal "did not jeopardize the cause of action against the insurance company." *Id.* The case is not on point because it did not address any statute of limitations question. Moreover, the quoted language was derived from *Reese v. Preferred Risk Mut. Ins. Co.*, 457 S.W.2d 205 (Mo.App.1970). That case addressed the subrogation rights of an insurer pursuant to the

policy and the uninsured motorist statute effective at that time. One basis for the lower court's judgment in that case was a belief that a dismissal with prejudice against the third-party tortfeasor prejudiced the insurer's subrogation rights to recover against the tortfeasor. *Id.* at 209–10. The *Reese* court held that an insurer had *no subrogation rights*. *Id.* Section 379.203.4 was not considered in *Reese*, but used only for illustration purposes in the opinion. *Id.* at 209 n. 2. The statute has since been interpreted to provide a right of subrogation in *uninsured* motorist cases. *See e.g., Oates; Brake v. MFA Mut. Ins. Co.*, 525 S.W.2d 109 (Mo.App.1975); *Kroeker v. State Farm Mut. Auto. Ins. Co.*, 466 S.W.2d 105 (Mo.App.1971). Arguably, a subrogation right may not exist in *underinsured* cases, depending upon relevant facts. *See* n. 8.

against her insurer. *Id.* at 420. The court reasoned that this failure precluded the widow from showing she was "legally entitled to recover" from the tortfeasor. *Id.*

In so deciding, the *Baumgartel* court relied, in part, on *Crenshaw v. Great Central Ins. Co.*, 527 S.W.2d 1 (Mo.App.1975). In *Crenshaw*, the plaintiffs were parents of a child killed in a vehicular accident. They sued their insurance carrier seeking wrongful death damages under the uninsured motorist coverage of their policy. They did not, however, sue the tortfeasor within the time allotted for a wrongful death action (then two years per section 537.100, RSMo (1969)). The trial court dismissed the suit, and the eastern district affirmed that judgment. *Id.* at 3, 6.

In doing so, the *Crenshaw* court noted that wrongful death statutes have "special limitation periods." *Id.* at 5. The court reasoned that "[c]ompliance with the requirement that an action for wrongful death be commenced within two years is a necessary condition attached to the right to sue—not merely a statute of limitations in the ordinary sense." *Id.* at 4[4]. Continuing, the *Crenshaw* court declared, "we are committed to the view that the limitations of the death statutes are matters of *substantive right* and not mere technical limitations or bars to the remedy." *Id.* at 4[5] (emphasis supplied). As such, the plaintiffs "let their cause of action die." *Id.* at 6. Consequently, the plaintiffs could not show they were "legally entitled to recover" from the tortfeasors as they could not show fault, i.e., their substantive statutory right to recover was extinguished. *Id.* at 5[8].

■ The difference between "procedural" law (as discussed in *Oates* and *Edwards*) and "substantive" law (as discussed in *Baumgartel* and *Crenshaw*) has been explained thusly: Procedural law prescribes the method and manner of enforcing rights or obtaining redress for their invasion, while substantive law creates, defines, and regulates rights. *Wilkes v. Mo. Highway and Transp. Comm'n.*, 762 S.W.2d 27, 28[1] (Mo.banc 1988). "In Missouri, statutes of limitations are procedural in nature." *State v. Casaretto*, 818 S.W.2d 313, 316[6] (Mo.App.1991). Statutes of limitations for wrongful death, however, are substantive. *Crenshaw*, 527 S.W.2d at 4[5].

■ These distinctions are dispositive here. This is not a suit where the underlying cause of action would have been for wrongful death. It is a suit where the underlying claim was for personal injuries. Consequently, this appeal is governed by cases such as *Oates* and *Edwards* (where the time bar for the underlying suit was procedural in nature), and not by cases such as *Baumgartel* and *Crenshaw* (where the time bar for the underlying suit was substantive in nature). Although Defendant's right of subrogation—if one existed in this case (*see* n. 8)—was destroyed by Plaintiff's failure to sue Tortfeasor within five years of the accident, that fact is irrelevant. *Oates*, 583 S.W.2d at 717–19. The running of the five-year statute of limitations was only a procedural bar to Plaintiff's suit against Tortfeasor, i.e., it did not destroy Plaintiff's ability to show that he was "legally entitled to recover" against Tortfeasor. *Id.* at 716–18; *Edwards*, 574 S.W.2d at 508. Since Plaintiff brought this suit on the insurance contract in less than ten years after the accident, the suit was not time-barred by the applicable statute (§ 516.110).

In sum, Point I has merit. The trial court erred when it sustained Defendant's motion for judgment on the pleadings based on the defense of statute of limitations; consequently, the judgment cannot be sustained on that basis.

### Points II and III: Release Language and Vexatious Refusal Claim

In Points II and III, Plaintiff alleges generally that the trial court erred when it relied on language in the release given by Plaintiff to Tortfeasor as a second basis for entering a judgment on the pleadings adverse to Plaintiff. Plaintiff first argues that the trial court should not have considered the release, attached to Defendant's answer, because the judgment was entered on the pleadings.[5] Second, Plaintiff asserts that the "circularity" that the trial court foresaw resulting from the release was not a certainty, i.e., there were several "potential outcomes" other than what the trial court assumed in its findings of fact. Finally, Plaintiff claims the trial court improperly relied upon language that allegedly appeared in the insurance policy when it rendered its decision. He argues that the policy was never put before the court via the pleadings or otherwise, and therefore, the trial court "made a factual finding ... in an evidentiary vacuum." For all of these reasons, Plaintiff alleges that the judgment must be reversed.

The release included the following language:

"I agree to **reimburse** and **indemnify** [Tortfeasor] for any amounts which any insurance carriers, government entities, hospitals or other persons or organizations may recover from them in **reimbursement** for amounts paid to me or on my behalf as a result of this accident by way of **contribution, subrogation, indemnity,** or **otherwise.**"

Regarding this language, the trial court found as follows:

"This circular provision contained in the release means that [Plaintiff] is agreeing to reimburse and indemnify [Tortfeasor] on account of any action brought by an insurance carrier based

upon subrogation. This release provision on its face makes this present litigation appear meaningless or superfluous. If it were determined in this litigation that [Plaintiff] can recover from [Defendant], then [Defendant], but for the interference with its subrogation rights by [Plaintiff's] failure to sue the [Tortfeasor] within the statute of limitations, could recover from [Tortfeasor] *based on its subrogation rights*. Under the terms of the release this would then create an obligation on the part of [Plaintiff] to **reimburse** and **indemnify** [Tortfeasor] based on the release language.... This would result in a wash financially, making this litigation meaningless." (Italics added.)

Continuing, the trial court also found "it would be *inequitable* to allow [Plaintiff] to escape his contractual obligations in the release to '**reimburse** and **indemnify**' because of the tactical ploy of not naming [Tortfeasor] in this case within the statute of limitations." (Italics added.)

These excerpts show that the second basis for this judgment was that Defendant has, or in the future will have, subrogation rights. However, this premise is only an assumption that is not supported by the record; consequently, the court's ultimate conclusion that the release rendered the litigation meaningless is speculative. To explain, we must first consider the doctrine of subrogation.

Subrogation substitutes another person in the place of a creditor, so that the party in whose favor subrogation is exercised succeeds to the rights of the creditor in relation to the debt. *Estate of Griffitts*, 938 S.W.2d 621, 623[7] (Mo.App. 1997). Stated otherwise,

"[A]ny person, who pursuant to a legal obligation to do so, has paid even indirectly, for a loss or injury resulting from the wrong or default of another will be

---

5. Plaintiff bases this argument on the fact that the release was first attached to Defendant's answer at the hearing on the motion for judgment on the pleadings. In the body of Defendant's answer, however, language from the release was extensively quoted. *See* Rule 55.22. Plaintiff failed to file a reply thereto and is deemed to have admitted the execution of the release. *See* Rules 55.09 and 55.23.

subrogated to the rights of the creditor or injured person against the wrongdoer or defaulter, persons who stand in the shoes of the wrongdoer, or others who, as payor, are primarily responsible for the wrong or default."

*Kroeker,* 466 S.W.2d at 110 (quoting 83 C.J.S. *Subrogation* § 16).

 Although subrogation originated as a common law equitable doctrine that had as its aim the advancement of justice and the prevention of injustice, *Metmor Fin., Inc. v. Landoll Corp.,* 976 S.W.2d 454, 461[8] (Mo.App.1998), "the right to invoke the doctrine of subrogation may be contractual." *Anison v. Rice,* 282 S.W.2d 497, 503 (Mo.1955).[6] Subrogation based upon the common law, i.e., legal subrogation, is not an option "where it would be inconsistent with the terms of the contract."[7] *Id.* at 503–04[9]. This means, *inter alia,* that contract provisions waiving subrogation rights are valid and enforceable. *Disabled Veterans Trust v. Porterfield Const., Inc.,* 996 S.W.2d 548, 552[2] (Mo.App.1999).

In its brief, Defendant concedes that the subject insurance contract was not before the trial court when it entered a judgment on the pleadings. Because the trial court's second reason for entering judgment on the pleadings was premised on the existence of subrogation rights in Defendant, the following excerpt explains why that premise is faulty and cannot form the basis for the judgment:

"The policy not being before us we are left in the dark on the question whether it contained a provision relating to the subject of subrogation and, if so, whether that provision allowed, or forbade, subrogation or whether the policy was silent on the subject. '(T)he terms of the (policy), and the conditions arising from its performance, may be such as to show that the parties did not intend that subrogation should result and in such case it will not result. Equity will not engraft this doctrine on the transaction in the face of a contract that negatives the idea of subrogation. * * * (Equity) will not apply (the doctrine) if the contract either expressly or by legal implication forbids it.' "

*Hartford Acc. & Indem. Co. v. J & S Sewer Const. Co., Inc.,* 556 S.W.2d 206, 208–09 (Mo.App.1977) (quoting *Capen v. Garrison,* 193 Mo. 335, 92 S.W. 368, 370 (Mo.1906)).

 The same situation exists here as was described in *Hartford,* namely, neither the trial court nor this court has a clue about what provision, if any, the subject insurance contract contained regarding subrogation. We cannot explain the fallacy in the trial court's reasoning better than did the *Hartford* court. On this record, the trial court could only speculate that Defendant had subrogation rights.[8] "It is

---

**6.** "Conventional subrogation" refers to the rights that stand on contract, whereas "legal subrogation" is a phrase sometimes used when referring to the common law equitable doctrine of subrogation. *Aetna Cas. & Sur. Co. v. Lindell Trust Co.,* 348 S.W.2d 558, 570 [15] (Mo.App.1961).

**7.** More than that, Missouri courts classify the doctrine of legal subrogation as a "fairly drastic remedy [that] is usually allowed only in extreme cases 'bordering on if not reaching the level of fraud.' " *Metmor,* 976 S.W.2d at

461[10] (quoting *Landmark Bank v. Ciaravino,* 752 S.W.2d 923, 928 (Mo.App.1988)).

**8.** The trial court's premise, that subrogation rights exist, may be flawed for yet another reason. A serious question exists whether an insurer could *ever* be subrogated to a personal injury claim in the underinsurance realm. *See, e.g. Hays v. Missouri Highways and Transp.,* 62 S.W.3d 538 (Mo.App.2001); *Marshall v. Northern Assurance Co.,* 854 S.W.2d 608 (Mo.App.1993); *Jones v. Aetna Cas. & Sur. Co.,* 497 S.W.2d 809 (Mo.App.1973);

axiomatic that judgments based on speculation and conjecture cannot stand." *Stone v. Farmington Aviation Corp.*, 232 S.W.2d 495, 499[3] (Mo.1950).

In sum, neither the trial court, nor this court, can decide, *at this juncture*, whether Defendant would have subrogation rights *vis-a-vis* Plaintiff's claim for underinsurance benefits. Having earlier concluded that there was merit in Point I, and now finding merit in Points II and III, we reverse the judgment and remand for further proceedings.

PARRISH, J., and RAHMEYER, C.J.P.J., concur.

*Forsthove v. Hardware Dealers Mut. Fire Ins. Co.*, 416 S.W.2d 208 (Mo.App.1967); *Travelers Indem. Co. v. Chumbley*, 394 S.W.2d 418 (Mo. App.1965); and Leland Dempsey and Thomas Davis, *Settlement with the Tortfeasor in the UIM Situation*, 50 J.Mo.B. 133 (1994).