Susie M. Wilson, Respondent, v. Massachusetts Bonding and Insurance Company, Defendant, Massachusetts Bonding and Insurance Company and Fidelity and Deposit Company of Maryland, Appellants.—190 S. W. (2d) 944.

St. Louis Court of Appeals. Opinion filed November 20, 1945.

Respondent's motion for a rehearing and motion to transfer to Supreme Court overruled December 18, 1945.

*Leahy & Leahy* for appellants.

*Harry Gershenson* for respondent.

SUTTON, C.—This action was commenced before a justice of the peace to recover five hundred dollars deposited by plaintiff as collateral security with defendant Massachusetts Bonding and Insurance Company. Plaintiff obtained a judgment against defendant in the justice court, and defendant appealed to the circuit court. The appeal bond was executed by the Fidelity and Deposit Company of Maryland as surety.

The trial anew in the circuit court resulted in a judgment for plaintiff against defendant Massachusetts Bonding and Insurance Company and its surety, the Fidelity and Deposit Company of Maryland, for $527, including interest. From this judgment the Massachusetts Bonding and Insurance Company and the Fidelity and Deposit Company of Maryland appeal.

The evidence shows that Lamine Finney brought an attachment suit against Frank W. Trogdon in the circuit court of St. Louis. The attachment bond was executed by Lamine Finney as principal and by the Massachusetts Bonding and Insurance Company as surety for the amount of $1586, conditioned, in accordance with section 1444, Revised Statutes 1939, Missouri Revised Statutes Annotated, "that the plaintiff shall prosecute his action without delay and with effect, refund all sums of money that may be adjudged to be refunded to the defendant, or found to have been received by the plaintiff and not justly due to him, and pay all damages and costs that may accrue to any defendant, garnishee or interpleader by reason of the attachment, or any process or proceeding in the suit, or by reason of any judgment or process thereon, and pay all damages and costs that may accrue to any sheriff or other officer by reason of acting under the writ of attachment, following the instructions of the plaintiff."

Susie M. Wilson, plaintiff in this case, deposited with the Massachusetts Bonding and Insurance Company, defendant in this case, a Fourth Liberty Loan bond in the amount of five hundred dollars. Upon the making of the deposit the parties executed an agreement defining the purpose of the deposit as collateral security to protect the bonding company against any and all liability, loss, cost, damage or expense on the attachment bond. The bonding company is given full power and authority to cash, sell, assign, transfer and deliver the collateral security, or any part thereof, without notice, at public auction or private sale at any time, the depositor having the right to substitute other collateral security acceptable to the bonding company, but agreeing to keep on deposit at all times collateral security acceptable to the bonding company to the value of not less than five

hundred dollars until complete performance of the condition of the attachment bond, and the bonding company is authorized to apply the collateral security, or any part thereof, or the proceeds of the sale thereof, or any part thereof, to reimburse itself for the payment of any claims, losses, or expenses of any kind that the bonding company may become liable for by reason of the execution of the attachment bond. It is further provided that upon the complete performance of the condition of the attachment bond and full reimbursement to the bonding company for any losses or expenses incurred, the bonding company will return to the depositor the collateral security or any balance or proceeds thereof, if any, remaining in its hands.

Later the Fourth Liberty Loan bond became due and was paid, and the sum of five hundred dollars received in payment of the bond was substituted as collateral in lieu of the bond, and at the same time the parties executed another agreement just like the agreement executed when the bond was deposited except that the collateral was described as five hundred dollars in cash.

The trial of the plea in abatement in the attachment suit resulted in a finding in favor of Trogdon, and on February 20, 1935, the attachment was dissolved.

The trial of the suit on the merits resulted in a judgment in favor of Finney and against Trogdon in the sum of $8.92.

On motion of the sheriff, charges in the sum of $82.50 for the storage of Trogdon's Chevrolet sedan seized under the writ of attachment, were ordered taxed as costs in the attachment proceeding against Finney and in favor of the sheriff.

On April 12, 1935, the bonding company paid to Frank W. Trogdon five hundred dollars by way of compromise and settlement of a claim for damages made by Trogdon against the company, and took from Trogdon a release wherein it is recited that the release is in full settlement and satisfaction of all claims for damages by reason of the attachment and for all attorney's fees, court costs, and damages, arising out of and by reason of the filing of the attachment suit and the giving of the attachment bond. The amount of Trogdon's claim was more than the amount of the attachment bond.

On March 20, 1936, the bonding company paid to the sheriff $85.90, the amount taxed as costs in his favor, for storage charges on the Chevrolet sedan.

Susie M. Wilson, plaintiff in this case, had no personal interest in the attachment suit. She deposited the collateral with the bonding company as a matter of accommodation to Lamine Finney.

Trogdon was in the employ of the Brotherhood of Railroad Trainmen at the time the attachment suit was commenced, and the Brotherhood was summoned as garnishee under the attachment writ. The Chevrolet sedan levied upon under the attachment writ was used by

Trogdon as a means of transportation in the transaction of the business he was engaged in as an employee of the Brotherhood of Railroad Trainmen.

At the time of the service of the garnishment it appears that the Brotherhood of Railroad Trainmen owed Trogdon earnings in the amount of $581.42.

The sedan was levied upon and attached on November 7, 1933, and the garnishment was served on November 9, 1933, so that the sedan and earnings were held under the attachment for more than fifteen months.

The items of damage as claimed by Trogdon were for loss of the use of the sedan while under attachment, for attorney's fees and expenses incurred in obtaining a dissolution of the attachment, and for the detention of the earnings due from the Brotherhood of Railroad Trainmen while under garnishment. The claim was made on March 11, 1935, by letter through Trogdon's attorney.

On April 17th, some three weeks after the bonding company and Trogdon had agreed upon the settlement, Trogdon wrote the bonding company that unless the amount agreed upon was paid promptly he would be forced to retrace his steps and enter suit at once. He further stated that he had turned over the amount agreed upon in the settlement to his attorney for fees.

It appears that the judgment in the court below was arrived at on the theory that the bonding company was not entitled to reimbursement for what it paid in settlement of Trogdon's claim for damages because the payment was made without any judgment having first been obtained establishing liability for the amount paid, in other words, that the payment having been made by the bonding company without a judgment establishing liability, it was a voluntary payment for which the company was not entitled to reimbursement.

We do not think the judgment can be upheld on that theory. If what the bonding company paid Trogdon was paid in discharge of its liability as surety under the bond, it was entitled to reimbursement from Finney as the principal under the bond without the necessity of having its liability established by judgment, and, of course, liability of the bonding company to Trogdon depends upon the liability of Finney to Trogdon. It is elementary law that where the surety makes a payment on default by the principal, it is the duty of the principal to reimburse the surety to the extent of his reasonable outlay. [Restatement of the Law of Security, sec. 104; 50 C. J. 250, 251, 252; 31 C. J. 440; Sinclair v. Wismann, 183 Mo. App. 709, 167 S. W. 580; Krebs v. Bezler, 338 Mo. 365, 89 S. W. (2d) 935; Henneke v. Strack (Mo. App.), 101 S. W. (2d) 743; State to use of Snell v. Reynolds, 3 Mo. 95.]

It follows as a matter of course that if the bonding company discharged Finney's liability to Trogdon, it was entitled to use the

collateral deposited with the bonding company by plaintiff to reimburse itself for the amount so paid.

Under the bond Finney and the bonding company were obligated, to pay Trogdon for all damages suffered by him by reason of the attachment. Finney was primarily obligated to make such payment. The deposit of the collateral made by plaintiff with the bonding company was made as a pledge that Finney would make such payment. He did not do so. Why then was not the bonding company entitled to discharge its obligation to Trogdon without waiting for suit and judgment against it and to reimburse itself out of the collateral which plaintiff deposited with it for that purpose? We are not advised of any rule of law or justice precluding the company from so doing.

We are not in agreement, however, with appellants' view that the judgment in favor of plaintiff in this case cannot be upheld because the settlement made by the bonding company with Trogdon is conclusive in the absence of fraud or bad faith on the part of the company in making such settlement. The cases relied on by appellants do not support that view. They involve contracts authorizing the sureties to adjust, compromise and settle claims. The appellants have the burden of showing the facts upon which Finney's liability depends as well as the reasonableness of the amount paid.

It is clear that Finney became liable for attorney's fees and expenses incurred in obtaining the dissolution of the attachment, for the reasonable value of the use of the Chevrolet sedan while it was held under attachment, for interest on Trogdon's earnings while held under garnishment, and for storage charges on the sedan. [State ex rel. Cole v. Shobe, 23 Mo. App. 474, 7 C. J. S. 369; State to use of Hayden v. McHale, 16 Mo. App. 478.]

The evidence does not show the value of the attorney's services nor facts from which the court could determine such value. Nor does the evidence show the value of the use of the sedan while held under attachment. It does show, however, the amount taxed as costs for storage of the sedan and the amount of the earnings held under garnishment and the period of time the earnings were held, so that the amount of interest thereon is a mere matter of calculation. With these items of damage determined, the judgment in favor of plaintiff in this suit for the full amount of her deposit is clearly erroneous.

Plaintiff relies on section 1449, Revised Statutes Missouri 1939, Missouri Revised Statutes Annotated, as follows:

"In any suit on such bond, any obligor may avail himself of any set-off or counterclaim he may have against the party to whose use the suit is brought, with the same effect as if such party were the plaintiff; and if such set-off or counterclaim shall exceed in amount the damages proved in behalf of such party, judgment shall be rendered against him in favor of the defendant setting up the set-off or counterclaim for the amount of the excess and all proper costs."

Plaintiff contends that under this section the bonding company was not entitled to pay Trogdon's claim and have reimbursement without waiting for a suit and judgment because the section contemplates that suit must be brought against both the surety and the principal so that the principal may avail himself of any set-off or counterclaim he may have against the party to whose use the suit is brought. Plaintiff cites no authority supporting this construction of the statute, and we do not think it may be so construed. The purpose of the statute is to permit any obligor who is a party to a suit on the bond to avail himself of any setoff or counterclaim he may have against the party to whose use the suit is brought with the same effect as if such party were the plaintiff. Obviously, the obligee in the bond may bring suit for his damages against the surety alone, if he so elects, and the surety may pay the damages without suit, if he so elects, and have reimbursement from the principal therefor.

What we have said is, of course, subject to qualification under the rule that ordinarily, where the surety, without suit, pays an obligation upon which the principal has a defense known to the surety and available to him in a suit against him alone, the principal has no duty to reimburse him. [Restatement of the Law of Security, sec. 108.]

To the end that justice may be done, we think the judgment of the circuit court should be reversed and the cause remanded for another trial. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.

### ON MOTION FOR A REHEARING.

SUTTON, C.—Plaintiff, on motion for a rehearing, complains that we have overlooked State ex rel. Stevenson v. American Surety Co. (Mo. App.), 74 S. W. (2d) 1094, and Veale v. Bourne, 224 Mo. App. 614, 30 S. W. (2d) 793, which she contends support her construction of Section 1449, Revised Statutes Missouri 1939, Missouri Revised Statutes Annotated, that is, that the section contemplates that suit on an attachment bond must be brought against both the surety and the principal so that the principal may avail himself of any setoff or counterclaim he may have against the party to whose use the suit is brought. It is obvious that these cases lend no support to such construction of the statute. What the cases hold is that the proper remedy is by an independent suit on the bond and not by motion in the attachment suit. They do not hold that the suit must be brought against both principal and surety. In fact, State ex rel. Stevenson v. American Surety Co., the very case which plaintiff chiefly relies on, was brought against the surety alone.

Section 1448, Revised Statutes 1939, Missouri Revised Statutes Annotated, provides that the bond given by the plaintiff, or other person, in a suit by attachment, may be sued on at the instance of any party injured, in the name of the State, to the use of such party, for the breach of the condition of such bond. This section prescribes the remedy to be pursued by the party injured, that is, by an independent suit on the bond. It is obvious that the purpose of section 1449 is not to prescribe the remedy to be pursued by the party injured, for his remedy is prescribed by section 1448. The purpose of section 1449 is merely to permit any obligor sued on the bond—whether principal or surety—to avail himself of any setoff or counterclaim he may have against the party to whose use the suit is brought, notwithstanding the bond runs in the name of the state and the suit is so brought.

An attachment bond, like other security bonds, is a joint and several contract, and the obligors thereon are jointly and severally liable, and suits may be brought against any one or more of the obligors. [Secs. 3340, 3343, R. S. 1939, Mo. R. S. A.; State ex rel. Dunklin County v. Blackmore, 275 Mo. 695, 205 S. W. 626; Schneider v. Maney, 242 Mo. 36, 145 S. W. 823; State ex rel. Ozark County v. Tate, 109 Mo. 265, l. c. 268, 18 S. W. 1088; State ex rel. Yeoman v. Hoshaw, 86 Mo. 193.]

The Commissioner recommends that the motion for a rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. Plaintiff's motion for a rehearing is accordingly overruled. *Hughes, P. J.,* not sitting; *McCullen* and *Anderson, JJ.,* concur.