CITY OF OLIVETTE, a Municipal Cor-
poration, Plaintiff,

v.

UNITED STATES CASUALTY COMPANY,
a Corporation, Defendant, Cross-
Claimant, Appellant

and

Jerry Kaiser, Defendant, Cross-Defendant,
Respondent.

No. 33338.

St. Louis Court of Appeals,
Missouri.

April 28, 1970.

Motion for Rehearing or to Transfer to the Supreme Court Denied May 28, 1970.

Application to Transfer Denied Sept. 14, 1970.

Kenney, Reinert & Hespen, St. Louis, for defendant, cross-claimant, appellant.

Rosenblum & Goldenhersh, St. Louis, Merle L. Silverstein, Clayton, for defendant, cross-defendant, respondent.

DOERNER, Commissioner.

This appeal involves a cross-claim by United States Casualty Company, the surety on a performance bond, to recover from the remaining principal, Jerry Kaiser, the amount of $3705 which the surety paid to the obligee, City of Olivette, together with attorney's fees and expenses of $1565.78 expended by the surety, or a total of $5,-334.68. At the close of the surety's evidence the court sustained the motion of the principal to dismiss the surety's cross-claim and entered judgment in favor of the principal, from which judgment the surety has appealed.

The bond was executed on September 8, 1959, by Kaiser and Melvin H. Glick (who died and was subsequently dismissed as a party) as principals, and the Casualty Company as surety, in the amount of $28,-500, for which they bound themselves to the Town (now City) of Olivette as follows:

"THE CONDITION OF THE FORE-GOING OBLIGATION IS AS FOL-LOWS:

"WHEREAS, said Principal has filed with the Town of Olivette, a propoased

(sic) subdivision of said tract described as Indian Meadows subdivision, Plat 4; and filed a plat with the Town of Olivette for certain improvements and utilities consisting of Sanitary Sewers and connections, and streets, which are required to be installed in said Subdivision prior to the approval of said plat: and

"WHEREAS, provision has been made in said regulations whereby the Principal may, in lieu of the final completion of said improvements and utilities, file a Surety bond acceptable to the Town of Olivette in favor of said Town, which shall indemnify said Town and secure to said Town the actural (sic) construction of such improvements and utilities in a manner satisfactory to said Town, in the event said Principal shall fail to install said improvements and utilities within tow (sic) (2) years, from the date of approval of said Subdivision plat.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH THAT IF the said Principal, shall complete the installation and construction of such improvements and utilities as are prescribed and required by the Town of Olivette pursuant to the agreement above mentioned, then this obligation shall be void, otherwise to remain in full force and effect."

According to Carl J. Fiorito, Executive Department, Administrator of the Metropolitan St. Louis Sewer District, who was produced as a witness by the surety, in 1960 Kaiser and Glick submitted to the Sewer District engineering plans for the construction of the sewers to meet the District's requirements for the development of the subdivision. Fiorito testified that the District reviewed and approved the plans, and issued a permit to Penrod, Reeves and Gastorf, the developers' sewer contractor. According to Fiorito, " * * * They (the sewer contractor) installed the sewers as called for on the plans. * * * " After the construction was completed the

Survey and Inspection Department of the Sewer District inspected the work that had been performed and Fiorito sent the sewer contractor a letter dated August 11, 1960, the body of which reads:

"Inspection has been made of the completed sewer construction in the above mentioned project. The work has been done in accordance with approved plans and specifications, approval of the construction is hereby given, and the sewer contractor is released from further responsibility.

"Final approval and acceptance for public maintenance of these sewers will not be given until all final grading, streets, sodding, and other improvements are complete, a reinspection of the completed project made, and arrangements made for dedication of the sewers to the District.

"Please inform the Executive Assistant of the Metropolitan St. Louis Sewer District, when reinspection for final approval and dedication is desired."

Fiorito testified, as the letter indicates, that the purpose of the letter was to furnish " * * * the authority of the developer to release the contractor from further responsibility."

Sometime in 1962 the City of Olivette asked the Sewer District what was necessary for the District to accept the responsibility for and the ownership of the sewers. As a result of that inquiry, Fiorito requested the Sewer District's Maintenance Department to inspect the sewers. The actual inspection was made by one of that Department's foreman named John Ross, and two of his helpers, on or about April 10, 1962. According to Ralph W. Mueller, Maintenance Engineer in that Department, Ross reported to him that there were certain deficiencies, which Ross had noted on the plan, and Mueller prepared a memorandum to Fiorito, dated April 10, 1962, in which the subject was given as "Dedica-

tion Inspection for Maintenance Acceptance of 'Indian Meadows Plat No. 4'."

The body of the memorandum is as follows:

"*Sanitary Sewers:*

Rock must be cleaned out of manhole #3.

"*Storm Sewers:*

10  1.  The inlet opposite inlet #10, must be cleaned.

30  2.  Inlets #1, #2, #3, and #4 must be cleaned.

60  3.  Six courses of brick must be replaced in manhole #2 and eleven courese (sic) replaced in manhole #3.

15  4.  Stone must be reset on inlet #1.

2500  5.  Lines, inlets #9, to #8, to #7, (239 feet—24" ~~feet~~ —7 feet deep) has many open joints with mud coming thru (please see item 3, storm, in RWM report of April 3, 1962 of Indian Meadows #3—adjoining).

1000  6.  The 24-inch line from manhole #3 north to the ditch, is in bad condition and must be relaid (8 pipe). The pipes are pulled apart 4 inches to 8 inches. (Filled ground settlement.) Twenty or so, tree trunks must be removed from pipe and ditch."

$3615

Mueller stated that he made an estimate of what it would cost the Sewer District's Maintenance Department to fix each of the foregoing items, and showed the cost of each by writing in the margin the figure which appears opposite each item.

The information regarding the alleged deficiencies was given to the City of Olivette, which demanded that Kaiser and Glick correct them. When they did not do so the City instituted an action against Kaiser and Glick, and the Casualty Company, on April 18, 1963, on the bond. Kaiser and Glick denied any liability, as did the Casualty Company, and the latter cross-claimed against Kaiser and Glick. Various negotiations towards a disposition of the litigation followed, in which, according to the surety's counsel, Kaiser declined to pay more than $500 in settlement. Ultimately the surety and the City reached an agreement under which a judgment was entered in favor of the City and against the surety for $3705, which amount the surety paid to the City. It appears that that disposition of the City's claim was made without any prior specific notice of the settlement being given to Kaiser or his counsel. The appellant surety then amended its cross-claim to plead the judgment against it and the payment in satisfaction of the same to the City, for which, together with its expenditure of $1565.78 for attorney's fees and expenses, it prayed judgment against the respondent Kaiser.

With matters in that state the parties proceeded to trial, and the foregoing evidence was introduced by the appellant. It should be added that the City of Olivette apparently paid to the Sewer District the sum of $3705 which the City had received from the appellant. For during the course of his direct examination Fiorito testified that another inspection had been made by the Sewer District a few weeks before trial, which disclosed that there was then no deficiency to be found in the storm sewer, shown as Item 5 in Mueller's memo-

**356** ■ ▇▇▇▇▇▇▇▇▇▇▇▇

randum, and that the District would therefore refund to the appellant surety the sum of $2500.

At the close of appellant's evidence the respondent orally moved for the dismissal of appellant's cross-claim. After arguments on that motion the court sustained the same and appellant's appeal followed. The gist of appellant's points is that the court erred in dismissing its cross-claim because its evidence had made a prima facie case. Respondent contends (1) that the trial court properly dismissed appellant's cross-claim because the appellant's evidence showed that respondent had not breached the bond and neither appellant nor respondent had been legally liable to the City on the bond; (2), that since the City had sued both the appellant surety and the respondent principal, but had obtained a judgment against only the City, the judgment was "void"; and (3), that appellant was a mere volunteer insofar as its payment to the City was concerned. We consider respondent's second and third points first.

■ By the use of the word "void" it is apparent that respondent means that the judgment was not binding or conclusive on respondent. That that is his meaning is shown by the statement in his brief: " * * * It (the appellant surety) can secure reimbursement from its principal only if it can show that the (City of) Olivette claim was valid. * * *" So construing the word "void," we agree with respondent's conclusion. Where the judgment is against the surety alone, in an action against the principal and the surety, the surety in order to recover against the principal must show that the principal had breached the bond. 72 C.J.S. Principal and Surety § 327, p. 791. That is also the rule where the surety makes a settlement with the obligee before any action is filed, and then seeks to recover from the principal. Wilson v. Massachusetts Bonding & Ins. Co., 238 Mo.App. 882, 190 S.W.2d 944; Central Surety & Ins. Corp. v. Hinton, 233 Mo.App. 1218, 130 S.W.2d 235; 72 C.J.S.

Principal and Surety § 309, p. 767. Hence the decisive issue is whether the appellant's evidence showed that the respondent had breached and become liable on his bond. For absent such proof the respondent was not obligated to the appellant and in paying the City the latter became a mere volunteer.

■ In determining the foregoing question, appellant's evidence must be viewed in the light of the terms of the bond. The condition of that undertaking was that respondent would " * * * complete the installation and construction of such improvements and utilities as are prescribed and required by the Town of Olivette pursuant to the agreement above mentioned * * *"; that is, the sewers and connections. The parties appear to be in tacit agreement that the sewers and connections were to be installed and constructed in accordance with the engineering plans that respondent had prepared and submitted to the Metropolitan St. Louis Sewer District which the latter had reviewed and approved. Furthermore, the parties appear to also tacitly agree that the question of whether the respondent had in fact installed and constructed the sewers and connections in accordance with such approved plans was left to the determination of the Sewer District. This is understandable, for as Fiorito pointed out, the Sewer District would not accept the dedication of the sewers and connections unless and until they were approved by the District.

Having in mind the condition of the bond, did appellant's evidence show that respondent had failed to " * * * complete the installation and construction * * *" of the sewers and connections in accordance with the plans and specifications approved by the Sewer District? On the contrary, appellant's own evidence, particularly Exhibit 2, the letter of Fiorito dated August 11, 1960, affirmatively showed that respondent had in fact done so. For it was expressly stated therein that "Inspection has been made of the *completed* sewer *construction* * * *

The work has been done in accordance with approved plans and specifications, *approval of the construction is hereby given,* and the sewer contractor is released from further responsibility." (Emphasis supplied.) As Fiorito testified, the very purpose of that letter was to evidence to the developer, the respondent, the fact that the work of its sewer contractor, Penrod, Reeves & Gastorf, "* * * had been done in accordance with the approved plans and specifications and this was the authority of the developer to release the contractor from further responsibility." And since the Sewer District, acting in a sense as the agent of the City, approved the contractor's work as constructed and completed in accordance with the approved plans, and authorized the contractor's release from further liability, it logically follows that that approval likewise constituted a determination that respondent had completed "the installation and construction" of the sewers in compliance with the condition of his bond.

Appellant points to the second paragraph of the same letter and argues that it shows that that communication was not a final approval of the installation and construction of the sewers. What is actually stated therein is that final approval of the project for public maintenance would not be given "until all final grading, streets, sodding, and other improvements are complete * * *." None of the deficiencies found in the District's inspection of April 10, 1962, had anything to do with final grading, streets, or sodding. In fact, appellant's evidence, in the form of Mueller's testimony concerning the deficiencies noted on his memorandum of April 10, 1962, made almost two years after the District had approved the sewers as completed in accordance with the plans, is somewhat meager regarding the cause of the deficiencies. All that was developed was on cross-examination, when in response to whether the original construction was defective or subsequent damage occurred, Mueller replied:

"Well, sure, some of this is—these minor things, cleaning inlets, I know that the dirt run down the street and went in the inlet. And stone must be reset, I know somebody hit that stone and a manhole to be raised, well, that's only natural, as things take shape and landscaping is perfected why the manholes have to be adjusted. Things like that I know. I know that."

That testimony indicates that the so-called deficiencies arose long after the installation and construction of the sewers had been completed and approved, and refutes, rather than supports, appellant's argument that its evidence showed that respondent had breached the bond.

For the reasons stated the judgment is affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.