HARTFORD ACCIDENT AND INDEM-NITY COMPANY, Plaintiff-Appellant,

v.

J & S SEWER CONSTRUCTION COMPANY, INC.,

and

Fee Fee Trunk Sewer, Inc., Defendants-Respondents.

No. 37303.

Missouri Court of Appeals, St. Louis District, Division Four.

Sept. 6, 1977.

Kortenhof & Ely, Robert L. Nussbaumer, St. Louis, for plaintiff-appellant.

Fitzsimmons & Fitzsimmons, Attys., Inc., Daniel J. McMichael, Clayton, for Fee Fee Trunk Sewer, Inc.

David Welsh, Bridgeton, for J & S Sewer Const. Co., Inc.

NORWIN D. HOUSER, Special Judge.

Hartford Accident and Indemnity Company recovered a judgment for $5,000 in its suit for subrogation against J & S Sewer Construction Company and Fee Fee Trunk Sewer, Inc. Defendants' motions for a new trial were sustained. Hartford appealed.

A new trial was granted for failure on the part of Hartford to make proof in four respects, which we consider in order.

■ First, failure to present evidence of plaintiff's corporate entity. In its amended petition plaintiff alleged its corporate existence. Defendants' answers stated they did not have sufficient information to form a belief as to the truth of the allegation and therefore denied the allegation. Neither defendant raised an issue as to the legal existence of Hartford by specific negative averment with supporting particulars as required by § 509.140, RSMo 1969 in order to place upon Hartford the burden of proof on the issue of Hartford's legal existence or capacity to sue. Accordingly, under § 509.-140 it was sufficient to aver the ultimate fact, and plaintiff was not obligated to introduce evidence on the issue. *United Farm Agency v. Howald*, 263 S.W.2d 889, 893 (Mo.App.1954).

Second, failure to introduce in evidence the insurance policy issued by Hartford to Upson Construction Company and failure to prove the policy provisions relied upon as the basis for Hartford's claimed right of subrogation. Hartford pleaded that on December 10, 1971 there was in effect a policy of insurance issued to Upson providing liability coverage in connection with its construction business; that Upson constructed a residence building which it sold to H. D. Mephan; that pursuant to subcontract with Upson, J & S Sewer Construction Company installed a sewer system leading to the residence building; that through the negligence of J & S in its installation the basement was flooded; that Fee Fee Trunk Sewer, Inc. was negligent in failing to inspect the sewer system constructed by J & S; that an inspection would have revealed the improper installation; that Mephan, damaged by flooding, made a claim against Upson for breach of implied warranty of fitness for the purpose intended; that to minimize damages Hartford negotiated a settlement of Mephan's claim against Upson, the insured, for $5,000, after first notifying J & S and Fee Fee of the claim and of Hartford's intention to settle the claim should they fail to do so; that they did so fail; that Hartford settled Mephan's claim for $5,000 and that "Under and by virtue of said policy of insurance issued by plaintiff to said Upson Construction Company, plaintiff was and is now subrogated to all rights of recovery the said Upson Construction Company may have against the defendants arising out of said payment." Hartford

prayed for judgment for $5,000 and attorneys' fees.

Hartford did not introduce in evidence the policy or a file copy of the policy. All that appears is that it was "a comprehensive business policy providing Upson with complete operation coverage." What that means was not developed. There was nothing to show that under the policy Hartford had the duty or authority to negotiate a settlement of Mephan's claim, or that Hartford was obligated to pay his unliquidated claim. Hartford did not prove that the policy contained a subrogation provision, and consequently did not prove the terms of any subrogation provision. Hartford did not produce as a witness the adjuster who made the settlement with Mephan. He was no longer with the company and his whereabouts were unknown. Hartford's principal witness was James Trelford, its senior claims representative. Having no personal knowledge of the transaction he testified from the records, of which he was custodian. From the investigative file he testified that Hartford had in effect a comprehensive business policy of insurance providing Upson with complete operation coverage; that Hartford notified J & S and Fee Fee that a claim had been made and that Hartford would attempt settlement; that Hartford "hoped" that J & S and Fee Fee "would agree to a percentage of the settlement or come in and take over negotiations"; that J & S and Fee Fee did not settle the claim of Mephan; that Hartford settled Mephan's claim; that Hartford gave Mephan a draft for $5,000, and that Mephan gave Upson a release; that although Hartford "felt" it was not liable—that it had no contractual obligation to pay a claim against Upson that was not Upson's fault—it "felt" it had an obligation to settle the claim, in its discretion, since the carriers for J & S and Fee Fee had failed to contribute to the settlement. Trelford admitted he had no documents executed by Upson recognizing Hartford's right to proceed against J & S and Fee Fee. On cross-examination Trelford was asked but failed to state under what policy provision Hartford determined that it was obligated to pay

money to Mephan. He said Hartford paid the $5,000 "to get this claim settled." The release signed by Mephan released Upson from any and all claims on account of flood damage. There is no evidence that Upson released Hartford from liability under its policy or that Upson assigned to Hartford its claims and rights against J & S for negligent performance of its subcontract, or against Fee Fee for negligent failure to inspect.

■ It is not always necessary in subrogation cases arising out of insurance policy provisions to produce the policy or make proof of the exact terms of the policy provision for subrogation. Thus, the insurer may recover against a negligent third party on the theory of subrogation, without introducing the policy in evidence, where testimony by the insured showing that the policy obligated the insurer to make the payment is admitted in evidence and where, upon insurer making the payment, insured releases insurer of its liability on the policy and assigns to insurer insured's rights and causes of action against the negligent third party. *General Exchange Ins. Corp. v. Young*, 206 S.W.2d 683 (Mo.App.1947), aff., 357 Mo. 1099, 212 S.W.2d 396 (1948). The release and assignment in that case clearly showed that the parties to the contract of insurance intended that the insurer be subrogated to the rights of the insured.

■ In the case at bar, however, there is no clear showing of any obligation to pay or intention that Hartford be subrogated. There is no evidence that Upson released Hartford of liability on its policy, or that Upson assigned to Hartford its claims and causes of action against J & S and Fee Fee. The policy not being before us we are left in the dark on the question whether it contained a provision relating to the subject of subrogation and, if so, whether that provision allowed, or forbade, subrogation or whether the policy was silent on the subject. "[T]he terms of the [policy], and the conditions arising from its performance, may be such as to show that the parties did not intend that subrogation should result

and in such case it will not result. Equity will not engraft this doctrine on the transaction in the face of a contract that negatives the idea of subrogation. * * * [Equity] will not apply [the doctrine] if the contract either expressly or by legal implication forbids it." *Capen v. Garrison*, 193 Mo. 335, 92 S.W. 368, 370 (1906). This is an action at law, and not in equity, but the same considerations apply. Having alleged that its right to subrogation arises "under and by virtue of" the policy of insurance, Hartford had the burden of proving that Hartford had authority to negotiate the settlement and an obligation to pay the amount agreed upon, and of proving either that the policy contained a provision allowing subrogation or, at the very least, that to allow subrogation would not be inconsistent with the terms of the contract of insurance. Hartford failed to sustain this burden, and for this reason the order granting a new trial must be affirmed.

Third, failure to prove that Hartford was obligated to pay $5,000 to Mephan. As indicated there was no substantial evidence of Hartford's obligation under the policy. Hartford has a copy of the policy in its possession, according to Mr. Trelford. If on retrial the copy is produced, properly accounted for and received in evidence the policy provisions will prescribe the extent and nature of Hartford's obligation and rights.

■ Fourth, lack of evidence of the value of the contents of the dwelling allegedly damaged. Hartford's witness testified to the existence of a list of the articles damaged, prepared by the owner of the damaged property, with a dollar value placed upon each article by him, showing original cost, depreciation taken, and the net amount claimed; that Hartford's representative examined the articles, went over the list, and both parties agreed upon the net amounts of damage, but there was no testimony as to the total amount of the items listed and the list was not offered or received in evidence. Hartford takes the position that it was not obliged to prove the value of the damaged property; that the

amount paid is conclusive on the defendants, in the absence of fraud or collusion, and that Hartford is entitled to recover the full amount paid in settlement under the circumstances of this case. Ordinarily the party seeking indemnity based on the settlement of a claim for damages to property must prove that the settlement effected was fair and reasonable, *Wilson v. Massachusetts Bonding & Ins. Co.*, 238 Mo.App. 882, 190 S.W.2d 944, 947[3](1945); *Globe Indemnity Co. v. Schmitt*, 142 Ohio St. 595, 53 N.E.2d 790, 794 (1944), and in the absence of other considerations not so far appearing in this case Hartford would be well advised to make such proof on retrial.

The order setting aside the judgment for $5,000 and granting a new trial as to both defendants is affirmed.

SIMEONE, C. J., and ALDEN A. STOCKARD, Special Judge, concur.