Rebecca MEADOWS, Individually; as Personal Representative of the Estate of Hazel I. Greer, Deceased; and as Trustee of the Paage N. Weis Trust, Plaintiff/Appellant,

v.

Flossie G. JEFFREYS, Beverly Thornton and Frank Thornton, Defendants/Cross–Appellants.

Nos. 20282 & 20299.

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 1996.

Rehearing Denied May 22, 1996.

Lee Chestnut, Springfield, for plaintiff-appellant.

Douglas W. Greene, III, Jason W. Johnson, Twibell, Greene, Johnson & Kizer, Springfield, for defendants/cross-appellants.

GARRISON, Judge.

In this consolidated appeal, Rebecca Meadows (Plaintiff) appeals, in Case No. 20282, from an order sustaining Defendants' motion to dismiss her petition for failure to state a claim. Flossie G. Jeffreys (Deceased),[1] Frank Thornton and Beverly Thornton (Defendants) appeal, in Case No. 20299, from the trial court's order denying their motion for damages on an attachment bond. The following is a summary of the facts as we glean them from the record.

Hazel I. Greer had two bank accounts at Boatmen's Bank of Southern Missouri totalling $60,279.98. Each account was held in the names of Ms. Greer, Plaintiff and Defendant Flossie Jeffreys as joints tenants with rights of survivorship. Ms. Greer died on February 12, 1994, and on February 25, 1994, Defendant Flossie Jeffreys withdrew the funds from these accounts and purchased two certificates of deposit, titled to her and Defendant Beverly Thornton as joint tenants.

Plaintiff filed this suit on March 14, 1994, individually, as personal representative of the estate of Hazel I. Greer, deceased, and as trustee of the Paage N. Weis Trust.[2] The suit originally named Flossie G. Jeffreys and Beverly Thornton as defendants, but Frank Thornton (Beverly's husband) was later added as a defendant. In her petition, Plaintiff sought damages, an accounting, and a writ of attachment as a result of the removal of the money from the joint accounts. She also filed an attachment bond and obtained the issuance of a writ of attachment which was served the following day on Defendants. A garnishment was also served on Boatmen's Bank of Southern Missouri on the same day. All of the funds from the certificates of deposit were withdrawn from Boatmen's by Defendants, notwithstanding the earlier service of the writ of attachment and garnishment.

On March 17, 1994, the court issued a show cause order to the Thorntons pursuant to Plaintiff's motion to hold them in contempt. Later, Defendants filed a motion to dissolve the attachment, a motion to examine the attachment bond, and the motion to dismiss for failure to state a claim. On March 31, 1994, at the conclusion of an evidentiary hearing on the motions to dissolve the attachment and to hold Defendants in contempt, the court announced that it was dissolving the attachment and quashing the garnishment. In doing so, the court made comments on the record, summarized as follows:

1.) It did not believe Plaintiff was a proper plaintiff because there had been no estate opened for Ms. Greer and she had not, therefore, been appointed personal representative.

2.) That Hazel Greer effected a nonprobate transfer of the moneys, pursuant to §§ 461.003–.081,[3] when she placed them into a joint account. The court also noted that § 461.071 provides that beneficiaries of a nonprobate transfer or others receiving property of the decedent by a transfer other than from the administration of the decedent's probate estate are liable to account to the personal representative for a pro rata share of the value received to the extent necessary to discharge unpaid claims. It also indicated that § 461.071.2 provides that only the decedent's personal representative may enforce such obligations after receiving a written demand by a creditor or other specified persons. Plaintiff, however, had not been appointed to that capacity. In addition, the court said that the probate division of the circuit court has jurisdiction to hear and determine such matters.

3.) Because Plaintiff was not a creditor, the attachment was improvidently granted.

1. The record indicates that Flossie G. Jeffreys died on September 8, 1994. The effect of her death will be discussed in the body of this opinion.

2. Ms. Greer's will provided that her estate was to be divided between Plaintiff, as trustee of a testa-

mentary trust for Paage N. Weis, and Defendant Flossie Jeffreys.

3. All references to statutes are to RSMo 1994, and all references to rules are to Missouri Rules of Civil Procedure (1995) unless otherwise noted.

4.) "I would—although I'm not acting today, as far as I know, on a motion to dismiss, I must tell you that if a motion to dismiss the action on the pleadings comes my way, it's likely that I'm going to dismiss the whole lawsuit because I think if there's going to be a lawsuit under this— on this problem, it's more properly done in probate court under Section 461.071." [4]

The following day, Plaintiff filed a motion for reconsideration, and on June 22, 1994, Defendants filed a motion for damages on the attachment bond. On October 17, 1994, Plaintiff's counsel wrote the trial court informing it that Flossie G. Jeffreys had died. Thereafter, the court, on May 9, 1995, entered an order finding that "defendants, as joint tenants, had the absolute right to withdraw the funds" and granted this motion to dismiss. The court also denied Plaintiff's motion to reconsider dissolution of the attachment as well as Defendants' motion for damages on the attachment bond.

▉ Plaintiff and Defendants, in their respective notices of appeal, have identified the order or judgment appealed from as that of May 9, 1995.[5] These appeals, although consolidated by this court, will be discussed separately.

### CASE NO. 20282

▉ According to the record before us, Flossie G. Jeffreys died on September 8, 1994. The fact of her death was the subject of the letter by Plaintiff's counsel to the court dated October 17, 1994, a copy of which was sent to opposing counsel.[6] This was after the evidentiary hearing on the motion to dissolve the attachment, and after the parties argued the motion to dismiss, but before the trial court entered the order and judgment from which this appeal flows.

Rule 52.13(a)(1) provides, in pertinent part:

If a party dies and the claim is not thereby extinguished, the court may, upon motion, order substitution of the proper parties. Suggestion of death may be made by any party or person in interest by the service of a statement of the fact of the death as provided herein for the service of a motion.... Unless a motion for substitution is served within 90 days after a suggestion of death is filed, the action shall be dismissed as to the deceased party without prejudice.

In the instant case, nothing occurred with reference to substituting a party for Ms. Jeffreys before the court entered its judgment and order dismissing the petition and denying the motion for damages on the attachment bond on May 9, 1995, which was more than 90 days following the suggestion of death.

Plaintiff's claim against the Defendants, including Ms. Jeffreys, was for a money judgment, an accounting and an attachment. Ms. Jeffreys' death did not extinguish those claims against her. Pursuant to Rule 52.13(a)(1), however, the trial court was required to dismiss the suit against Ms. Jeffreys, without prejudice, as a result of the

---

**4.** The motion to dismiss had already been filed but apparently was not then before the court for ruling.

**5.** Section 512.020 is the statutory authorization for appeals from circuit courts in civil matters and, with exceptions not relevant here, requires that an appeal be from a "final judgment." The order appealed from in the instant case does not specify whether the dismissal was *with* or *without* prejudice. Rule 67.03 provides, in part, that "[a]ny involuntary dismissal shall be without prejudice unless the court in its order for dismissal shall otherwise specify." This dismissal was involuntary and the court did not designate it as being with prejudice. It was, therefore, without prejudice. The general rule is that a dismissal without prejudice is not an adjudication on the merits, *Ritter v. Aetna Casualty & Sur. Co.*, 686 S.W.2d 563, 564 (Mo.App.S.D.1985),

and is not a final judgment from which an appeal can be taken. *White v. Pruneau*, 913 S.W.2d 959, 959 (Mo.App.E.D.1996); *Karney v. Wohl*, 747 S.W.2d 214, 216 (Mo.App.E.D.1988).

There are exceptions to that rule, however. When the effect of the order is to dismiss the action and not merely the pleading, then the judgment is final and appealable. *Mahoney v. Doerhoff Surgical Serv., Inc.*, 807 S.W.2d 503, 506 (Mo. banc 1991). A dismissal without prejudice for failure to state a claim upon which relief can be granted has been held to be tantamount to a determination that a plaintiff has no cause of action, and results in a final, appealable judgment. *Hasemeier v. Smith*, 361 S.W.2d 697, 699 (Mo. banc 1962).

**6.** The certification of the legal file indicates that a copy was also filed in the circuit clerk's office.

failure to file a motion for substitution within 90 days after the suggestion of death.[7] As indicated earlier, the dismissal in the instant case was involuntary and, by reason of Rule 67.03, was without prejudice. The trial court, therefore, dismissed the suit against Ms. Jeffreys without prejudice, as it was required to do. The fact that it correctly did so but for the wrong reasons does not require reversal. *Metropolitan Tickets, Inc. v. City of St. Louis,* 849 S.W.2d 52, 53 (Mo.App. E.D.1993).

The dismissal of the claims against Ms. Jeffreys did not affect the continuation of the action against the remaining Defendants and the ruling concerning the claims against them. *See Loven v. Davis,* 783 S.W.2d at 154. Accordingly, we will consider the merits of Plaintiff's appeal concerning the dismissal of the Petition as it relates to the remaining Defendants.

■ Before doing so, we note that Defendants have filed a motion to dismiss Plaintiff's appeal, alleging that her points relied on violate Rule 84.04. Subsection (d) of that rule requires that points relied on "state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...." Three things are required with respect to points relied on: (1) a statement of the action or ruling of the trial court about which the party complains; (2) a statement that specifies why the ruling was erroneous; and (3) a statement informing the appellate court wherein the evidence at trial supports the position the party asserts the trial court should have taken. *Bentlage v. Springgate,* 793 S.W.2d 228, 229 (Mo.App. S.D.1990). Defendants argue that Plaintiff's points relied on violate each of these requirements.

As explained in *Thummel v. King,* 570 S.W.2d 679, 685 (Mo. banc 1978):

> [C]ompliance with these requirements is a matter of common sense if counsel bear in mind the informational purpose of the brief. After stating the ruling the trial court actually made, it stands to reason

that the point should then specify *why* the ruling was erroneous. This requirement essentially contemplates a statement which ordinarily will closely approximate what appellant believes should have been the trial court's conclusion of law on the point being addressed. After stating why the ruling was erroneous, the court then must be informed *wherein* the testimony or evidence gives rise to the ruling for which appellant contends.

■ The requirements of Rule 84.04 are mandatory. *In re Marriage of Sowers,* 733 S.W.2d 19, 20 (Mo.App.S.D.1987). Although in this case we deny Defendants' motion to dismiss, we will discuss violations of Rule 84.04 in conjunction with our discussion of each of the points on appeal.

Plaintiff's first point is:

### POINT ONE

The trial court's decision that the deceased had effected a nonprobate transfer of the funds in her account, thus apparently bringing this matter under the exclusive jurisdiction of the probate court on a request for relief was in error because the statute itself specifically excludes transfers of joint tenancy accounts from the scope of the nonprobate transfer laws upon which the trial court partially relied for its decision.

The issue for appeal is that identified in the point relied on. *Pruellage v. De Seaton Corp.,* 380 S.W.2d 403, 405 (Mo.1964). This point identifies the action or ruling of the trial court about which complaint is made as the "decision that the deceased had effected a nonprobate transfer of the funds." The court, however, did not purport to make any such finding in the order and judgment from which Plaintiff appeals. Plaintiff's contentions are based primarily on findings which she contends the trial court made at the conclusion of the hearing on the motion to dissolve the attachment. At that time the court made comments indicating his belief that Ms. Greer had effected a nonprobate transfer. They were, however, couched in

---

**7.** Where no such motion is filed, it has been said that the action against the deceased party is terminated. *See Loven v. Davis,* 783 S.W.2d 152, 154 (Mo.App.S.D.1990).

terms of "it seems to me" and "I've heard nothing yet to convince me otherwise."

The court's comments concerning dissolution of the attachment were as follows:

> It is my determination that the—that Mrs. Meadows is not a creditor, though she may at some point represent creditors and may be able to proceed under Section 461.071. If she is not a proper creditor, then the statutory requirements of the section on attachment do not apply and the attachment was improvidently granted initially and is now dissolved.

This statement apparently constituted the reasoning of the trial court for dissolving the attachment. The other statements of the court, including the ones indicating a belief that a nonprobate transfer had been made, were concerning an issue not then being considered by it. As such, they were merely volunteered expressions of opinion on a subject not before the court and did not constitute judicial findings. *See Carondelet Sav. & Loan Ass'n v. Boyer,* 645 S.W.2d 24, 27 (Mo.App.E.D.1982).

The comments relating to a nonprobate transfer were also never incorporated into a judgment or order. Rule 85.15 provides that "[t]he final judgment shall include any findings which the court has made on any motion to dissolve the attachment." The "Judgment, Order, and Findings" entered when the motion to dismiss was sustained, and which is the subject of this appeal, recites merely:

> The Court took up the Motion for Dissolution of the Writ of Attachment first. At the conclusion of evidence, and after having heard argument by counsel for both parties, the Court did enter its Order dissolving the Writ of Attachment and quashing the Garnishment in aid of the Attachment. As the Writ of Attachment was dissolved and the Garnishment quashed, the plaintiff's action for contempt was, therefore, moot, and additional evidence on that question was not taken. Defendants had also filed a Motion to Dismiss plaintiff's Petition.... The Court has reviewed voluminous Suggestions and Briefs submitted by counsel for all parties. After reviewing the Motions and the various Briefs

and Suggestions in Support and in Opposition to said Motions, the Court is convinced that the defendants, as joint tenants, had the absolute right to withdraw the funds in question. For that reason, the Court does overrule Plaintiff's Motion to Reconsider and does grant defendant's [sic] Motion to Dismiss plaintiff's Petition.

Plaintiff does not contend that the judgment violated Rule 85.15 by failing to include any "findings" actually made by the court concerning dissolution of the attachment.

■ Finally, as we understand the argument under Plaintiff's first point, she contends that the trial court erred in determining that Ms. Greer had established a nonprobate transfer because the bank accounts in question were joint accounts which, by statutory definition, are not included within nonprobate transfers. *See* § 461.005(5). She cites *Estate of Hayward,* 884 S.W.2d 10 (Mo.App.W.D.1994), for the proposition that any co-tenancy arrangement in which the account is payable to either tenant is governed by the joint account statutes, and that a decedent's intent to pass the funds to the account survivor is conclusively established by such an account. The court, however, in the order appealed from by Plaintiff, found that the bank accounts were held in joint tenancy and did not purport to hold that the concept of nonprobate transfers was applicable.

Plaintiff identified the order or judgment appealed from as the ruling sustaining the motion to dismiss, not the ruling dissolving the attachment. In neither her first point relied on nor the argument under that point does Plaintiff contend that the order actually appealed from was erroneous. She also makes no attempt to argue that the motion to dismiss was actually treated as a motion for summary judgment because of consideration of matters outside the pleadings. *See* Rule 55.27(a).

Because Plaintiff's point relied on does not identify a judgment actually made by the court, it follows that it could not specify "wherein" or "why" the ruling actually made was erroneous. Therefore, Plaintiff fails to advise this court and the opposing parties of

the rule of law the court should have applied and the way in which the trial court incorrectly applied controlling principles of law in dismissing the petition. *See In re Estate of Goslee,* 807 S.W.2d 552, 556 (Mo.App.S.D. 1991). By not complying with Rule 84.04, a party preserves nothing for appellate review. *Simpson v. Galena R–2 Sch. Dist.,* 809 S.W.2d 457, 458 (Mo.App.S.D.1991).

Under these circumstances, Point one is denied.

Plaintiff's second point is:

### POINT TWO

The trial court's decision that the defendant Flossie Jeffreys was absolutely entitled to abscond with the funds held jointly with Rebecca Meadows as co-surviving joint tenant without accounting to Rebecca Meadows for the money was erroneous as a matter of law, the true rule being that the tenants are presumed, in the absence of other proof, to be entitled to share equally in the funds in a joint account.

This point is without merit for several reasons. First, it purports to relate only to Flossie Jeffreys who died prior to the judgment appealed from. As indicated above, the trial court correctly dismissed the suit as it related to Ms. Jeffreys, even if for the wrong reasons.

Additionally, the trial court did not make a finding that Flossie Jeffreys was absolutely entitled to abscond with the funds without accounting to the other surviving co-tenant. Its finding that Defendants, as joint tenants, had the absolute right to withdraw the funds does not equate to the premise of this point. Therefore, like Plaintiff's first point, this point claims error concerning a ruling which the court did not make.

The argument portion of Plaintiff's brief under this point also fails to identify, as the order or judgment complained of, any ruling which was actually made by the trial court. Although Plaintiff appeals from the order sustaining Defendants' motion to dismiss, she does not argue that her petition stated a cause of action. Likewise, she makes no

contention that matters outside the pleadings were considered in ruling the motion to dismiss so that it was treated as a motion for summary judgment. Under these circumstances, this point is denied.

Plaintiff's third point is:

### POINT THREE

The trial court's decision that Rebecca Meadows was not "a proper plaintiff" was in error, as the legal capacity to sue, which is what the trial court was getting at, is waived by the defense if not raised in the first pleading, either by motion or in the answer, and it was never raised by the defense in this case.

As with Plaintiff's other two points relied on, she complains in this point of a ruling not contained in the judgment appealed from and which was never incorporated into an actual order or judgment. Even if the court had found that Plaintiff was not a "proper plaintiff," it was not contained in the judgment dismissing the petition from which this appeal is taken. For the same reasons specified in points one and two, this point is denied.

Plaintiff's fourth and final point is:

### POINT FOUR

This Court should allow plaintiff her attorney's fees on appeal.

This point fails to comply with each of the three requirements of Rule 84.04(d). Accordingly, it preserves nothing for review and is denied.

### CASE NO. 20299

In their cross-appeal, Defendants claim that the trial court erred in denying their motion for damages on Plaintiff's attachment bond.[8] The order denying the motion amounted to an adjudication of the claims presented in the motion, including those of the deceased Ms. Jeffreys.

The motion which was denied by the trial court was one in which Ms. Jeffreys and

---

8. In reviewing this appeal, we are not aided by Plaintiff's brief consisting solely of the statement

that Defendants' sole point "does not merit a reply."

the other Defendants were making affirmative claims. "A judgment, whether for or against the plaintiff, entered after the plaintiff's death without substitution of parties, is void and there is no final, appealable judgment." *Schleifer v. Shuler,* 699 S.W.2d 794, 795 (Mo.App.S.D.1985).[9] In *Haley v. City of Linn Creek,* 583 S.W.2d 590, 591 (Mo.App. S.D.1979), the court noted that while substitution of parties upon the death of a litigant may permit the continuation of a suit, no valid judgment can be rendered until such substitution occurs. This is because a court has jurisdiction to render judgments only for or against viable entities, which by definition does not include a dead person. *Holmes v. Arbeitman,* 857 S.W.2d 442, 443 (Mo.App. E.D.1993).

Because the order denying the motion for damages on the attachment bond was void as to the claims of Ms. Jeffreys, it adjudicated fewer than all of the claims under that motion.[10] The order appealed from contained no determination that there was no just reason for delay; as a result, it did not terminate the action as to any of the claims or parties, and was subject to revision at any time before entry of a judgment adjudicating all the claims and the rights and liabilities of all the parties. Rule 74.01(b); *Wilson v. Mercantile Bank of Springfield,* 791 S.W.2d 497, 500 (Mo.App.S.D.1990). As a result, we lack jurisdiction, a matter which we have a duty to determine, *sua sponte,* and must dismiss the appeal. *Id.* at 500. The appeal in Case No. 20299 is, therefore, dismissed.

MONTGOMERY, P.J., and BARNEY, J., concur.

---

**9.** *Schleifer* noted that there is an exception to this rule when the dismissal is under Rule 52.13(a)(1) for failing to serve a motion for substitution within 90 days after a suggestion of death. 699 S.W.2d at 795. The instant ruling, however, was not a dismissal pursuant to that rule.

**10.** We do not decide whether Defendants were otherwise authorized to pursue a claim for dam-

ages on the attachment bond by way of a motion filed after the attachment was dissolved but before Plaintiff's case was dismissed. *See J.C. Jones & Co. v. Doughty,* 760 S.W.2d 150, 158 (Mo.App.S.D.1988); *Wilson v. Massachusetts Bonding & Ins. Co.,* 238 Mo.App. 882, 190 S.W.2d 944, 948 (1945).